NORMAN W. COCKRELL, Administrator of the Estate of Mary Lynn
    Cockrell v. CROMARTIE TRANSPORT COMPANY AND JOHNNY
    HAROLD CAVANAUGH

No. 53

(Filed 14 July 1978)

**1. Automobiles § 89.1— last clear chance—failure to instruct erroneous**

     In a wrongful death action where deceased's automobile was struck by a
truck driven by the individual defendant when deceased's car was stalled just
over the center line in defendant's lane of travel, the trial court erred in deny-
ing plaintiff's request for an instruction on the doctrine of last clear chance
since the evidence tended to show that the accident occurred at midday when
the highway was free of defects and neither lane was burdened by other traf-
fic; the southbound traffic lane in the vicinity of the collision was approximate-
ly 12 feet wide as was the west shoulder of the road; the westernmost gouge
mark in the pavement, indicating the site of the left front portion of deceased's
car at impact, was 6 feet 8 inches from the center line of the highway; the
truck was 8 feet wide; though the shoulder of the road sloped off into a culvert
running under the south driveway to a school, there were no obstructions on
the shoulder south of the driveway which would have prevented a vehicle from
parking there; defendant truck driver told the investigating highway
patrolman that "he may have been running a little over the speed limit" at the
time of the collision; and defendant had at least 395 feet from the north
driveway of the school to deceased's location at the south driveway to observe
that deceased's car was motionless and to take action to avoid the collision.

**2. Automobiles § 89— last clear chance—instructions insufficient**

     Defendants' contention that even if the omission of a last clear chance in-
struction by name was error it was harmless because the instruction given
amounted, in substance and effect, to a charge on that issue is without merit,
since the court at no point informed the jury that, even if plaintiff had been
contributorily negligent, he was nonetheless entitled to recover if defendant,
having the ability to avoid the injury, had failed to exercise reasonable care to
do so.

**3. Automobiles § 89— death no result of defendant's negligence—failure to sub-
mit last clear chance—error not cured**

     Where the jury determined that (1) plaintiff's intestate was not killed as a
result of the negligence of defendant truck driver but (2) that she, by her own
negligence, contributed to her death, the erroneous refusal to instruct the jury
that, under the doctrine of last clear chance, the truck driver's negligent acts,
if any, could have been the efficient proximate cause of the deceased's death
despite her having been contributorily negligent may have affected the jury's
determination of the first issue; consequently, the jury's answer to that issue
did not cure the trial court's error in omitting a charge on last clear chance.

**4. Automobiles § 46— opinion evidence of speed—admissibility**

    In a wrongful death action arising from a collision between defendant's truck and plaintiff's intestate's stalled vehicle, the trial court erred in excluding a witness's opinion as to the speed of defendant's truck immediately prior to the collision since the witness had ample opportunity to observe the truck and to form an opinion as to its speed prior to the collision.

PLAINTIFF, the duly qualified administrator of the estate of his daughter, Mary Lynn Cockrell, commenced this civil action to recover damages for the wrongful death of his intestate. Trial was held before *Herring, J.*, at the 16 February 1976 Session, CUMBERLAND Superior Court, resulting in a verdict and judgment denying plaintiff's claim and awarding damages to defendants on their counterclaims. This judgment was affirmed by the Court of Appeals, 32 N.C. App. 172, 231 S.E. 2d 176 (1977). (*Hedrick, J.*, concurred in by *Parker* and *Clark, JJ.*). We allowed discretionary review 5 April 1977. This case was docketed and argued during Fall Term 1977 as No. 7.

Plaintiff's evidence tended to show the following: On 25 January 1973 at 12:40 p.m., the deceased, accompanied by Sally Brown was driving a 1961 Volkswagen headed north on U.S. Highway 421 in Sampson County. The two girls, then 17 years old, were students at Cape Fear High School in Cumberland County and were on their way to Sampson Technical Institute to visit the deceased's boyfriend. As the deceased attempted to execute a left turn into a driveway at the Institute, her car's engine stalled and the left front end drifted across the yellow line into the southbound lane, where it was struck by a truck owned by defendant Cromartie Transport Company and operated by defendant Johnny Harold Cavanaugh.

    In the vicinity of the Institute, Highway 421 was a straight, two-lane paved road, about 24 feet in width, running north and south with a small knoll approximately 1300 feet north of the accident site and a gentle incline running toward the knoll. The Institute, situated on the west side of the road, had a marked pedestrian crosswalk running across the highway directly in front of it. Two driveways entered the grounds of the Institute from the southbound lane of the highway, one being 123 feet south of the crosswalk and the other 245 feet north of the crosswalk. A "Pedestrian Crossing" caution sign facing southbound traffic was

located 627 feet north of the crosswalk and 318 feet north of that sign was a "School" caution sign, facing the same direction, recommending 35 miles per hour as a safe speed. On the date of the accident, the road surface was dry, free of defects and clear of other vehicular traffic. Under these conditions, a southbound traveler on the knoll would have had unobstructed visibility for about 1300 to 1400 feet down the highway.

As the deceased approached the Institute, she slowed her vehicle almost to a complete stop before beginning her left turn into the south driveway. At this time her passenger had a clear view of the highway north of them all the way to the top of the rise and saw nothing in front of them in either lane. The Volkswagen stalled just as the deceased commenced her turn and the left front end crossed the yellow line into the southbound lane. While the deceased attempted to restart the car, her passenger turned, glanced behind them and saw no traffic. She turned, spoke to the deceased and then looked up to see a large truck approaching them at the north driveway of the Institute. Shortly thereafter, the truck collided with the front of the Volkswagen, at which point the left front tire of the car exploded, its hood flew up, its fuel tank lid flew off and gasoline began to flow everywhere. The car slid on its tire rim backward into the northbound lane, exploded into flames and rolled into a ditch on the shoulder of the northbound lane. The deceased remained inside the Volkswagen after the collision, but her passenger, who survived, was thrown from the car during the accident.

Another plaintiff's witness testified that he saw the truck for the first time near the "School" caution sign, at which time the Volkswagen was sitting still, somewhat off line as if it were turning into the driveway. When the truck reached the north driveway, this witness heard the Volkswagen's engine "turning over" as the deceased tried to start it. This witness further indicated that the truck did not swerve or deviate from a direct line of travel from the time he first observed it until it struck the Volkswagen.

A highway patrolman who investigated the accident testified that the operator of the truck at one point admitted that he may have been running a little over the speed limit prior to the wreck. The posted speed limit for trucks in the vicinity of the Institute was 50 miles per hour.

The evidence for defendants tended to show the following: The defendant operator had driven tractor tankers for defendant Cromartie Transport Company for 15 years and was so employed on the date of the accident. He had delivered a load of petroleum products in Raleigh that morning and was returning, empty, to Wilmington via U.S. 421, a route he traveled frequently.

As the truck approached the north driveway of the Institute, the truck driver saw the Volkswagen slowing down but he did not notice whether the car was going to turn. He did recall, however, that the Volkswagen's turn signal was not on. Just as the truck reached the north driveway the car began to turn, but it was not until the truck reached the crosswalk that he knew the Volkswagen had stalled. The truck driver then locked the brakes on the trailer, but the truck collided with the car.

On cross-examination, the truck driver stated that he did not swerve his truck to the right before striking the Volkswagen because he "didn't have time." The driver also testified that he did not know whether there had been enough room between the front of the Volkswagen and any obstacles to his right to have allowed him to pass by the car on that side.

The operator of the tanker further stated that he had accumulated 14 assorted speeding convictions in the 10 years immediately preceding the trial, as well as one conviction for driving while his license was suspended and another for following too closely.

A witness for defendants testified that he had been traveling north on U.S. 421 shortly before the accident and had observed a red Volkswagen "possibly 200 yards" ahead of him in the northbound lane. He had seen the brake lights of the Volkswagen come on about 100 feet before it reached the south drive of the Institute, but he had not seen a turn signal. This witness also saw the truck, which at that time was "about seventy-five or eighty feet away from the point of impact." He saw a puff of smoke and observed the two vehicles come to rest, then proceeded to the scene to render aid.

At the close of all the evidence, plaintiff specifically requested that the trial court instruct the jury on the doctrine of last clear chance and that an issue on last clear chance be submit-

ted to the jury. Both these requests were denied by the trial court. The jury returned the following answers to the issues submitted to it:

"1. Was Mary Lynn Cockrell killed as a result of the negligence of the Defendant, Johnny Harold Cavanaugh?

ANSWER: No.

2. Did Mary Lynn Cockrell by her own negligence contribute to her death?

ANSWER: Yes.

3. What amount of damages, if any, is Norman W. Cockrell, Administrator of the Estate of Mary Lynn Cockrell, deceased, entitled to recover by reason of the death of Mary Lynn Cockrell?

ANSWER: _____

4. Was the Defendant, Johnny Harold Cavanaugh, injured as a result of the negligence of Mary Lynn Cockrell?

ANSWER: Yes.

5. If so, what amount of damages is the Defendant, Johnny Harold Cavanaugh, entitled to recover for personal injuries sustained by him?

ANSWER: 5,000.00

6. Was the property of the Defendant, Cromartie Transport Company, damaged as a result of the negligence of Mary Lynn Cockrell?

ANSWER: Yes

7. If so, what amount of damages is the Defendant, Cromartie Transport Company, entitled to recover for property damage?

ANSWER: 10,000.00"

The trial judge entered judgment in accordance with the jury verdict and plaintiff appealed. As noted earlier, the Court of Appeals affirmed the trial court's judgment and we granted plaintiff's petition for discretionary review.

Additional facts pertinent to the decision are related in the opinion.

*Downing, David, Vallery & Maxwell, by C. Douglas Maxwell, Jr., and Harold S. Downing, for plaintiff appellant.*

*MacRae, MacRae & Perry, by James C. MacRae for defendant appellees.*

COPELAND, Justice.

The sole assignment of error properly preserved for our consideration on this appeal is the failure of the trial court to instruct the jury on the doctrine of last clear chance. In its decision, the Court of Appeals concluded that last clear chance did not apply unless both parties were found negligent and held that the jury's verdict in the instant case finding the operator of the truck not to be negligent mooted any possible error by the trial court in denying the requested instruction. We have determined that this holding was error; therefore, the decision of the Court of Appeals must be reversed.

When charging the jury in a civil case it is the duty of the trial court to explain the law and to apply it to the evidence on the substantial issues of the action. G.S. 1A-1, Rule 51; *Superior Foods, Inc. v. Harris-Teeter Super Markets, Inc.,* 288 N.C. 213, 217 S.E. 2d 566 (1975); *Investment Properties of Asheville, Inc. v. Norburn,* 281 N.C. 191, 188 S.E. 2d 342 (1972). If a party contends that certain acts or omissions constitute a claim for relief or a defense against another, the trial court must submit the issue with appropriate instructions if there is evidence which, when viewed in the light most favorable to the proponent, will support a reasonable inference of each essential element of the claim or defense asserted. *See, Vernon v. Crist,* 291 N.C. 646, 231 S.E. 2d 591 (1977); *Atkins v. Moye,* 277 N.C. 179, 176 S.E. 2d 789 (1970).

The doctrine of last clear chance, if properly raised, should be submitted to the jury when the evidence tends to show "that after the plaintiff had, by his own negligence, gotten into a position of helpless peril (or into a position of peril to which he was inadvertent), the defendant discovered the plaintiff's helpless peril (or inadvertence), or, being under a duty to do so, should have, and thereafter, the defendant having the means and the time to avoid the injury, negligently failed to do so." *Exum v.*

*Boyles*, 272 N.C. 567, 576, 158 S.E. 2d 845, 853 (1968); *accord, Vernon v. Crist, supra.*

[1] Applying these principles to the record of the case *sub judice,* we hold that the trial court erred in denying plaintiff's request for an instruction on the doctrine of last clear chance. The evidence, when viewed in the light most favorable to plaintiff, shows that the accident occurred at midday, when the highway was dry and free of defects and neither lane was burdened by other traffic. Moreover, the southbound traffic lane in the vicinity of the collision was approximately 12 feet wide, as was the west shoulder of the road; the westernmost gouge mark in the pavement, indicating the site of the left front portion of the Volkswagen at impact, was 6 feet 8 inches from the center line of the highway; and the truck was 8 feet wide. Although the shoulder of the road sloped off into a culvert running under the south driveway of the Institute, there were no obstructions on the shoulder south of the driveway which would have prevented a vehicle from parking there. In addition, the defendant truck driver told a highway patrolman investigating the accident that he "may have been running a little over the speed limit" at the time of the collision.

The defendant truck driver, in operating a motor vehicle upon the highway, was under a duty to keep his vehicle under control and to keep a reasonably careful lookout so as to avoid a collision with other persons and vehicles using the road. *Black v. Gurley Milling Co., Inc.,* 257 N.C. 730, 127 S.E. 2d 515 (1962). The evidence in plaintiff's favor was sufficient to permit the jury to find, on proper instructions, that the deceased's Volkswagen was across the center line in the southbound lane, stalled and "sitting still", when the defendant truck driver reached the north driveway some 395 feet away; that at that time it should have been apparent to the operator of the truck that the occupants of the motionless car could not save themselves; and, at that time, that the truck driver (1) could have avoided colliding with the Volkswagen by stopping or driving off the road onto the shoulder of the highway but failed to do so, or (2) would have been able to avoid the car but deprived himself of the opportunity by his failure to maintain a lookout. Since the evidence was sufficient to invoke the principle of last clear chance, the trial court erred in

refusing, upon plaintiff's request, to include an instruction on this issue in its charge.

[2]   Defendants contend that even if the omission of a last clear chance instruction by name was error, it was harmless because the instruction given amounted, in substance and effect, to a charge on that issue. The specific allegations against defendants upon which the trial court charged included (1) failure to keep a proper lookout; (2) failure to keep the truck under proper control; (3) exceeding a reasonable and prudent speed under the circumstances in violation of G.S. 20-141(a); (4) exceeding the posted speed limit; and (5) failure to reduce speed to avoid a collision. The trial court also properly instructed the jury that if they found "that the plaintiff's intestate was also negligent, contributorily negligent, . . . the plaintiff then would not be entitled to recover any sum whatever of the defendants" on the theory of defendants' negligence. Although the charge covered the specific negligent acts alleged by plaintiff, at no point did the court inform the jury that even if plaintiff had been contributorily negligent, he nonetheless was entitled to recover if defendant, having the ability to avoid the injury, had failed to exercise reasonable care to do so. These instructions, consequently, were not a complete explanation of the doctrine of last clear chance and did not cure the trial court's error in refusing the requested charge on this issue.

[3]   As noted earlier, the Court of Appeals held that the jury verdicts on the issues submitted mooted the erroneous omission of the requested instruction. The pertinent issues submitted and the jury's answers were as follows:

"1. Was Mary Lynn Cockrell killed as a result of the negligence of the defendant, Johnny Harold Cavanaugh?

ANSWER: No.

2. Did Mary Lynn Cockrell by her own negligence contribute to her death?

ANSWER: Yes."

The Court of Appeals regarded "the jury's verdict finding Cavanaugh not to be negligent" as mooting this assignment of error. 32 N.C. App. at 173-174, 231 S.E. 2d at 178.

The jury's answer to one issue which determines the rights of a party may render exceptions concerning other issues moot. *Welch v. Jenkins*, 271 N.C. 138, 155 S.E. 2d 763 (1967). "However, error relating to one issue may not be disregarded when it is probable that it affected the answer to another." *Nello L. Teer Company v. Dickerson, Inc.*, 257 N.C. 522, 533, 126 S.E. 2d 500, 508 (1962).

A close examination of the first issue submitted here reveals that the jury did not find that the operator of the truck was not negligent, but merely that the deceased was not *"killed as a result of the negligence of . . . Cavanaugh."* (Emphasis added.) It is equally plausible that the jury's verdict reflects a determination that the negligence of the truck driver, if any, was not the proximate cause of the death of the deceased. The jury indeed may have found that the truck driver was negligent, but that the demise of plaintiff's intestate did not "result" from that neglect. The trial court instructed the jury that plaintiff should recover nothing of defendants should it be found that the contributory negligence of the deceased, if any, was a proximate cause of the collision. The jury therefore may have been misled to believe that a determination that the deceased's negligence was a proximate cause of the accident precluded a finding that her death resulted from the negligence, if any, of the truck driver. The fact that the jury answered the first issue "No" and the second issue "Yes", despite having been charged at three separate times to skip the second issue if the first issue was answered in the negative, evidences some degree of confusion on the jury's part in this regard. The erroneous refusal to instruct the jury that, under the doctrine of last clear chance, the truck driver's negligent acts, if any, could have been the efficient proximate cause of the deceased's death despite her having been contributorily negligent may have affected the jury's determination of the first issue; consequently, the jury's answer to that issue did not cure the trial court's error in omitting a charge on last clear chance.

The jury should have been allowed to consider the issue of defendant's negligence in light of a proper instruction on the doctrine of last clear chance. Moreover, although no assignment of error has been brought forward concerning these matters, there may be a serious question as to the sufficiency of the evidence to require the submission to the jury of the contributory negligence

issue and defendant's counterclaims. Plaintiff's evidence tends to show that the defendant truck driver need only have swerved his vehicle to the right in order to have avoided the collision entirely.

[4]   Plaintiff contends in his second assignment of error that the trial court should have admitted the opinion evidence of Ricky Vann Williams as to the speed of defendant's truck immediately prior to the collision. Williams testified that he did have an opinion as to the speed of the tractor tanker but the trial court sustained defendant's objection to admission of that opinion. Because Williams' answer to the question was not preserved in the record, we have no basis for determining whether its exclusion prejudiced plaintiff. *Gower v. City of Raleigh,* 270 N.C. 149, 153 S.E. 2d 857 (1967). Nevertheless, since this question may recur at retrial, we note that the record, as it now stands, shows that Williams heard the vehicle approaching or clearing the top of the knoll, saw it at the "School" caution sign 750 feet from the point of impact, observed it again at the north driveway and then watched it from the time it passed him at the crosswalk until it struck the Volkswagen. The witness, on this record, had more than ample time to form an opinion as to the speed of the truck and, should he testify to substantially the same facts at retrial, his opinion of the truck's speed should be admitted. *Loomis v. Torrence,* 259 N.C. 381, 130 S.E. 2d 540 (1963).

For the reasons given, the decision of the Court of Appeals is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.