JOE H. ADAMS v. HAZEL Z. MILLS

No. 282A84

(Filed 6 November 1984)

1. **Automobiles and Other Vehicles §§ 11.5, 75.1— hitting parked vehicle—contributory negligence—evidence sufficient**

   There was sufficient evidence from which a jury could find contributory negligence by plaintiff on the basis of negligence *per se* or ordinary common law negligence where defendant's evidence tended to show that plaintiff's truck was standing at least two feet onto the paved portion of the highway; that it was possible for defendant to park his truck on the opposite shoulder, which was more than wide enough to accommodate the entire width of the

truck; that the stop was not for a necessary purpose under G.S. 20-161(a) as a matter of law; and that the accident occurred on a rural road outside a municipality.

**2. Automobiles and Other Vehicles §§ 11.5, 75.1— hitting parked vehicle—contributory negligence per se—proximate cause**

The trial court erred in failing to submit to the jury the issue of causation based on plaintiff's negligence *per se* where a jury could reasonably infer from the facts that plaintiff negligently stopped his truck partially on the main traveled portion of the highway; that without this original negligence, the collision would not have occurred; and that the subsequent injury was clearly foreseeable, given the defendant's failure to keep a proper lookout and decrease his speed to avoid colliding with a vehicle on the highway. G.S. 20-161.

**3. Automobiles and Other Vehicles §§ 11.5, 75.1— hitting parked vehicle—common law contributory negligence—proximate cause**

The trial court erred in failing to submit the issue of causation based on plaintiff's common law negligence where there was evidence from which the jury could find that in the exercise of reasonable care and foresight plaintiff could have foreseen that parking on the narrower shoulder, partly on the pavement on the westbound lane of a two-lane paved highway, at sunset, would result in a collision with a vehicle whose driver was blinded by the bright setting sun, and that he was negligent in not choosing a more favorable place to park and attend to his tailgate. G.S. 20-161.

APPEAL by defendant, pursuant to G.S. 7A-30(2), from the decision of a divided panel of the Court of Appeals, reported at 68 N.C. App. 256, 314 S.E. 2d 589 (1984). The Court of Appeals affirmed the judgment entered by *Seay, J.,* at the 7 March 1983 Civil Session of Superior Court, ANSON County. Heard in the Supreme Court 13 September 1984.

This is an action for property damages, including the cost of rental of a substitute vehicle, instituted by the plaintiff, Joe H. Adams, on 5 June 1981. The defendant, Hazel Z. Mills, counterclaimed for personal injuries and property damages on 30 September 1981. The action was tried and at the conclusion of all the evidence, the trial court granted the plaintiff's motion under Rule 50 of the Rules of Civil Procedure, for a directed verdict on the defendant's counterclaims and refused to submit the issue of plaintiff's contributory negligence to the jury. Only the issues of defendant's negligence and plaintiff's property damages were submitted to the jury. The issue of defendant's negligence was answered in favor of the plaintiff and against the defendant, and the jury awarded damages in the amount of $3,250.00. Defendant's

motions under Rule 50 for judgment notwithstanding the verdict and under Rule 59 for a new trial were denied. Judgment was entered in the sum of $4,600.00, which included the sum of $1,350.00 stipulated for the plaintiff's loss of use of his vehicle.

Defendant appealed from the trial court's refusal to submit to the jury the issue of contributory negligence. No appeal was taken from the dismissal of defendant's counterclaim, and defendant did not seek a new trial on the issue of damages. The issue of liability as raised by the pleadings and the evidence forms the sole basis of this appeal.

*Caudle & Spears, P.A., by Lloyd C. Caudle and Thad A. Throneburg, and Henry T. Drake, for plaintiff-appellee.*

*Leath, Bynum, Kitchin & Neal, P.A., by Fred W. Bynum, Jr., and Henry L. Kitchin, for defendant-appellant.*

MEYER, Justice.

This action arose out of a two-vehicle collision which occurred when a pickup truck operated by the defendant struck the left rear of plaintiff's 1974 Ford F-750 dump truck, which was in a stationary position at the time of the collision. It is the defendant's contention that the plaintiff was contributorily negligent in temporarily letting his dump truck stand with a portion of it extending into the main traveled portion of the highway and that this negligence was a proximate cause of the collision. The sole issue presented on this appeal is the sufficiency of the evidence to support the defendant's affirmative defense of contributory negligence.

The evidence tended to show that on 4 February 1981, the plaintiff was to landscape a house on Rural Paved Road No. 1003 in Anson County. At about 5:00 p.m. he arrived at the house with a load of driveway stone. Plaintiff testified that he pulled up past the driveway, turned on his 4-way flashing lights, and backed his dump truck into the driveway. Plaintiff then climbed out of the dump truck, loosened the dump clamps, raised the dump up partially and started to drive out towards the road, dumping the rock as he went along. After dumping all of the rock, plaintiff pulled his truck out into the highway by turning in a westerly direction. Plaintiff proceeded about 42 feet west of the driveway

with his flashers still on, stopped his truck on the right (northern) shoulder of the road to clean the excess rock off the back of the tailgate and to secure the tailgate. Plaintiff again climbed out of his dump truck and went around to the back. He testified that he was probably stopped there for less than a minute before the collision. As he was fastening the tailgate, plaintiff heard defendant's truck coming down the road. Plaintiff testified that he looked over his right shoulder, saw the truck coming directly toward him, and jumped across the back of the truck to avoid being hit. The plaintiff did not hear the screech of tires or the defendant's horn.

The plaintiff testified further that the highway was a two-lane, paved road with one lane for eastbound traffic and one lane for westbound traffic. From the driveway looking in an easterly direction, there was a clear and unobstructed view for 1,200 to 1,400 feet. In a westerly direction, there was a straight, unobstructed view for 1,100 to 1,200 feet. Defendant's vehicle was coming from the east and heading in the direction of the bright, late afternoon sun which was setting in the west. The collision occurred between 5:00 and 5:15 p.m. When the plaintiff spoke to the defendant after the crash, the defendant told him that he had been blinded by the sun. Jack Painter, who was working with the plaintiff that day, testified that the defendant's truck was traveling at sixty to sixty-five miles per hour.

The evidence as to the exact position of plaintiff's dump truck prior to the collision was conflicting. The plaintiff's evidence was to the effect that the dump truck was resting entirely on the shoulder and that no portion of the dump truck extended onto the paved portion of the highway. On cross-examination, the plaintiff testified that he thought that the shoulder was "better than 8 feet wide" and that his truck was approximately eight feet wide.

I don't remember any of my truck being on the pavement. To the best of my knowledge, it was not on the pavement but was close to the pavement but I don't remember it being on the pavement.

Plaintiff testified further that the dump truck's tandem set of tires measured eighteen inches to two feet; that after the accident, the left rear end of the dump truck was resting approx-

imately eighteen inches to two feet in the road; the front end was approximately five or six feet off the road; and that the defendant's vehicle "was behind my truck somewhat in line with my truck."

Plaintiff also testified that the shoulder on the opposite side of the road was much wider than it was on the side where the accident occurred. Plaintiff stated that he had parked another truck on the other side of the road which was completely off the pavement and not even close to the pavement. He stated that there was nothing to prevent him from taking the dump truck over to the other side of the road to put the tailgate up, he had simply decided to use the side of the road on which the shoulder was narrower. Finally, plaintiff testified that he could not secure the tailgate of his truck in the private driveway itself because he had dumped rock all the way out to the road.

The defendant's evidence was to the effect that plaintiff's truck was left standing only partially on the shoulder, with at least two feet extending and protruding into the westbound lane of travel. The State Highway patrolman called to the scene, Larry Wayne Whitley, testified that immediately after the accident, plaintiff had stated that he had pulled as far off the road as he could, but that the wheels on the left side of his truck were on the pavement. Whitley testified further that he measured the width of the shoulder at the point of the collision and that it was six feet wide. To the right of the shoulder a ditch swept off into a gutter. On the opposite side of the road directly across from the six foot shoulder was a thirteen foot and five inch shoulder. Both shoulders were more or less level with the pavement. Whitley also testified that there were no skid marks from the defendant's truck and that the defendant stated he had never decreased his speed.

The defendant testified as follows:

When I topped the hill about a quarter of a mile east of the accident scene, I noticed the sun was bright in front of me. I could see but I couldn't—the sun still kept me from seeing. I am sure you have been in places where the sun is bright. And I couldn't see a long distance ahead of me, as I went on down the hill. When I topped the hill I could see the area and Joe Adams' truck down there but I assumed the

truck was off the road. From that distance I could not tell whether it was on the pavement or not. Then I proceeded on down the hill, and I got about halfway down the hill and the sun got worse. I pulled my sun visor down, and I put my right hand up so I could see the road.

The sun just blinded me. I guess it was through my glass and truck too—the sun blinded me. I was trying to see the road, and I started—I saw the center line. I didn't want to run into anybody. I looked at the center line. I was following the center line as close as I could; yet I was not going to cross the center line because I might run head on into somebody. I don't know how long I did that. I slowed the truck down and I proceeded following the line hoping I was going to run out of the sun. I've run into sunny places, and you'd go a little ways and run out of it.

Well, the next thing I knew I'd done had had the wreck, and the Rescue Squad picked me up whenever I come to where I could realize anything. I am definitely sure I didn't leave the pavement of the road because I was following as close to the line as I could—that's the only thing I had to go by—and hoping I'd run out of the sun to get my vision back on the full vision of the road. I could see the road from a distance out there, but not a long distance ahead of me. I would say I was traveling from 20 to 30 miles an hour. I don't think I exceeded 30. I don't think I'd be up here telling about it if I was driving much faster than that.

The trial court ruled that the foregoing evidence failed to establish the plaintiff's contributory negligence and refused to submit the issue of contributory negligence to the jury. The jury found the defendant negligent and awarded plaintiff property damages for his vehicle.

When charging the jury in a civil case, it is the duty of the trial court to explain the law and to apply it to the evidence on the substantial issues of the action. N.C.G.S. 1A-1, Rule 51(a); *Cockrell v. Transport Co.*, 295 N.C. 444, 245 S.E. 2d 497 (1978). "If a party contends that certain acts or omissions constitute a claim for relief or defense against another, the trial court must submit the issue with appropriate instructions if there is evidence which, when viewed in the light most favorable to the proponent, will

support a reasonable inference of each essential element of the claim or defense asserted." *Id.* at 449, 245 S.E. 2d at 500. *See also Vernon v. Crist*, 291 N.C. 646, 231 S.E. 2d 591 (1977).

Contributory negligence constitutes an affirmative defense; therefore, the defendant had the burden of proving (1) that plaintiff failed to exercise proper care in the performance of a legal duty which plaintiff owed to defendant under the circumstances in which they were placed; and (2) that such negligent breach of duty was a proximate cause of the injury suffered. *See Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 311 S.E. 2d 559 (1984); *Murray v. R.R.*, 218 N.C. 392, 11 S.E. 2d 326 (1940); *Whitt v. Rand*, 187 N.C. 805, 123 S.E. 84 (1924).

The Court of Appeals held that the trial court was not obligated to charge the jury on contributory negligence or to submit it as an issue because the defendant failed to carry his burden of proving that the plaintiff was negligent and that such contributory negligence was a proximate cause of the collision. The majority specifically found that defendant failed to offer "any evidence that the plaintiff violated [N.C.] G.S. 20-161(a), the basis for [defendant's] contributory negligence claim" because (a) "he has offered no evidence that the stop was not temporary"; (b) "that it was not for a necessary purpose"; and (c) "that the plaintiff parked his truck on the road 'outside municipal corporate limits'." 68 N.C. App. 259, 314 S.E. 2d at 591. The author of the dissent below disagreed on the ground that there was evidence tending to show that the plaintiff parked or left his vehicle standing on the paved portion of the highway and that there was no evidence to show that the stopping was for a statutorily permissible purpose. *Id.* at 260, 314 S.E. 2d at 592.

We find that the evidence was sufficient to take the case to the jury on the issue of plaintiff's contributory negligence on the basis of either negligence per se or ordinary common law negligence. Accordingly, the defendant is entitled to a new trial on the issue of liability.

[1] We will first address the question of whether there was sufficient evidence to take the case to the jury on the issues of (A) contributory negligence per se and (B) proximate cause, and then discuss the additional question of (C) the sufficiency of the evi-

dence to submit the issue of contributory negligence on the basis of ordinary principles of common law negligence.

### A.

N.C.G.S. 20-161 is a safety statute which regulates stopping on the highway. *See Sharpe v. Hanline*, 265 N.C. 502, 144 S.E. 2d 574 (1965); *Melton v. Crotts*, 257 N.C. 121, 125 S.E. 2d 396 (1962). N.C.G.S. 20-161 provides that:

> (a) No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled portion of any highway or highway bridge outside municipal corporate limits unless the vehicle is disabled to such an extent that it is impossible to avoid stopping and temporarily leaving the vehicle upon the paved or main-traveled portion of the highway or highway bridge.

> (b) No person shall park or leave standing any vehicle upon the shoulder of a public highway outside municipal corporate limits unless the vehicle can be clearly seen by approaching drivers from a distance of 200 feet in both directions and does not obstruct the normal movement of traffic.

It is well established that an unexcused violation of N.C.G.S. 20-161 is negligence per se. *King v. Allred*, 309 N.C. 113, 305 S.E. 2d 554 (1983); *Hughes v. Vestal*, 264 N.C. 500, 142 S.E. 2d 361 (1965). To be actionable, negligence in parking a vehicle on a public highway in violation of this statute must be a proximate cause of the injury in suit. *Burke v. Carolina Coach Co.*, 198 N.C. 8, 150 S.E. 636 (1929).

Except in cases of disablement, it is negligence to park a vehicle on the paved surface of a highway when there is sufficient space to stop on the shoulders. *McNair v. Kilmer & Co.*, 210 N.C. 65, 185 S.E. 481 (1936). We have held that "the provisions of [N.C.] G.S. 20-161 require that no part of a parked vehicle be left protruding into the traveled portion of the highway when there is ample room and it is practicable to park the entire vehicle off the traveled portion of the highway." *Sharpe v. Hanline*, 265 N.C. at 504, 144 S.E. 2d at 576. The statute does not prohibit the emergency parking of a vehicle on the shoulder of a highway where no part of the vehicle extends into the main traveled portion of the highway. *Thomas v. Deloatch and Long v. Deloatch*, 45 N.C. App. 322, 263 S.E. 2d 615, *disc. rev. denied*, 300 N.C. 379, 267 S.E. 2d

685 (1980). Therefore, the preliminary questions which must be addressed in this case are whether plaintiff's dump truck was pulled entirely off or was extending partially into the main traveled portion of the highway, and whether it was practicable for plaintiff to have parked elsewhere.

Although plaintiff's evidence was to the effect that the truck was pulled completely off the main traveled portion of the road, and therefore not parked in violation of the statute, there was also ample evidence to the contrary. The defendant correctly points out that the facts as recited in the majority opinion of the Court of Appeals overlook much of the evidence contained in the record which was favorable to the defendant concerning the position of plaintiff's truck.

The defendant's evidence tended to show that the plaintiff's truck was parked or was standing at least two feet onto the paved portion of the highway immediately preceding and at the time of the accident. The plaintiff had testified that the total width of his truck was eight feet. According to the investigating officer the shoulder of the road was only six feet wide at the place where plaintiff had indicated that the truck was parked prior to the accident. Immediately after the accident, the plaintiff had told the officer that although he had pulled as far off the road as he could, the wheels on the left side of his truck were on the pavement. The width of the truck's tandem set of wheels was, according to plaintiff, eighteen inches to two feet. Other circumstantial evidence supporting the defendant's contention that the plaintiff was partially parked on the highway is the defendant's testimony that he followed the center line all the way down the highway and was certain that his truck never left the road.

Ample evidence was presented which indicated that it was possible in this rural, open area for plaintiff to park his truck on the opposite shoulder which was more than wide enough to accommodate the entire width of the truck. Thus, a factual issue was raised by the evidence presented as to the location of the stationary vehicle and the practicability of parking the entire vehicle off the traveled portion of the highway. Resolution of these factual issues concerning location and practicability should properly have been left to the jury and not the trial judge. *Cole v. Koonce,*

214 N.C. 188, 198 S.E. 637 (1938); *Thomas v. Deloatch and Long v. Deloatch*, 45 N.C. App. at 328-29, 263 S.E. 2d at 620.

In addition, the words "park" and "leave standing" in N.C. G.S. 20-161 have been construed so as to exclude a mere temporary or momentary stoppage for a necessary purpose. *Saunders v. Warren*, 264 N.C. 200, 141 S.E. 2d 308 (1965); *Melton v. Crotts*, 257 N.C. 121, 125 S.E. 2d 396. In the instant case, the plaintiff's evidence showed that the stop was, indeed, a temporary one, made for the purpose of securing the tailgate on his truck. However, defendant strongly contends that the plaintiff did not demonstrate that the temporary stop was for a necessary purpose as a matter of law. We agree.

The evidence clearly indicates that plaintiff's truck was not disabled. The plaintiff testified that the stop was for the purpose of clearing loose rock off his tailgate and securing his tailgate upon completion of dumping rock in the driveway. No testimony was offered as to the quantity and consistency of the rock on the tailgate indicating that had the plaintiff traveled any distance, it would have blown onto the highway and endangered other motorists.

The majority of the Court of Appeals held that the defendant had offered "no evidence" that the stop was "not for a necessary purpose on the ground that N.C.G.S. 20-116(g) forbids any vehicle loaded with rock to be driven on the highway unless measures are taken to prevent the load from blowing off the truck." 68 N.C. App. at 259, 314 S.E. 2d at 591.

Even conceding that the plaintiff had a statutory duty to clear the excess rock from the rear of his truck so as to prevent harm to other motorists caused by flying rock, it does not necessarily follow that under the factual circumstances of the instant case, plaintiff's stop was for a "necessary purpose" under N.C.G.S. 20-161(a) as a matter of law.

In *Melton v. Crotts*, 257 N.C. 121, 125 S.E. 2d 396, we held that "[W]hether a puncture or blowout is such a disablement of a motor vehicle as to justify the driver in stopping partially on the paved portion of the highway is ordinarily a question for the jury unless the facts are admitted." *Id.* at 130, 125 S.E. 2d at 402. Similarly, in *Thomas v. Deloatch and Long v. Deloatch*, 45 N.C.

App. 322, 263 S.E. 2d 615, the issue of contributory negligence was submitted to the jury where the defendant's evidence tended to show that the plaintiff had stopped his vehicle partially on the highway due to transmission disability. There, the plaintiff's evidence and contentions in the light most favorable to him were to the effect that the car was coasting and could not have turned into a driveway and was in fact completely off the road when stopped. The court held that the situation presented a factual question for the jury to determine as to whether the stop due to the transmission disability was unavoidable.

In this case, although the plaintiff testified that "I could not secure the tailgate of my truck in the private drive because I had dumped rock all the way out to the road," he also stated that "There was nothing to prevent me from taking the truck I was driving over to the other side of the road to put the tailgate up." Plaintiff admitted that he simply chose to pull onto the side of the road with the narrower shoulder; he did not indicate that he was under any constraint to do so. Indeed, he had parked another truck on that opposite and wider shoulder.

The weight to be given to plaintiff's explanation for his decision to pull onto the narrower shoulder rather than clear the rock in the private drive or on the opposite shoulder is properly a matter for the jury to determine. Certainly a stop for this purpose can be considered no *more* necessary than a stop caused by either transmission disability or a punctured tire. Therefore, as in *Melton* and *Thomas*, the situation in the instant case presented a jury question as to whether it was necessary for the plaintiff to stop his truck where he did in order to clear loose, excess rock from the tailgate and secure the tailgate.

The Court of Appeals also found "that the defendant failed to offer any evidence that the plaintiff parked his truck on the road 'outside municipal corporate limits' which is an essential element in establishing a violation of G.S. 20-161(a)." 68 N.C. App. at 259, 314 S.E. 2d at 591. We note that there is no indication in the record or briefs that proof of this element of the statute was ever contested or at issue in the court below. Moreover, a careful reading of the evidence in the record indicates that this accident occurred on a rural road and outside a municipality.

The parties stipulated that the maximum, posted speed limit was 55 miles per hour. On direct examination, the plaintiff testified that "On February 4, 1981, I was landscaping a house on Rural Paved Road 1003 which house is approximately a mile and one-half west of Highway 145." Plaintiff's witness at the scene, Jack Painter, testified that he "was working at a house on 1003 in the southern part of the county." The investigating officer testified, "I traveled down 52 to Morven and 145 over and then turned off 145 to 1003." The officer then identified defendant's exhibits Nos. 2, 3, 4, 5 and 6 as representing the area where the accident occurred and these exhibits were introduced into evidence. The photographs contained in the record clearly depict a rural scene. No evidence was introduced which indicated that the accident site was within municipal corporate limits. It is readily apparent from the foregoing summary that sufficient evidence was introduced to support the reasonable inference that the accident occurred outside a municipality and that plaintiff's conduct was therefore governed by N.C.G.S. 20-161(a).

We therefore hold that the record clearly contains sufficient evidence from which a jury could find the initial requisite of plaintiff's liability, his negligence on the basis of the violation of a safety statute, or negligence per se.

B.

In *Hughes v. Vestal,* 264 N.C. at 508, 142 S.E. 2d at 367, we stated: "[i]t is true that the violation of the statute regulating 'Stopping on Highway,' [N.C.] G.S. 20-161 is negligence per se. But whether such violation is the proximate cause of the injury in a particular case is ordinarily a question for the jury." Therefore, assuming the jury were to find plaintiff negligent, the remaining question is whether the jury could reasonably infer that plaintiff's negligence in parking his dump truck was a proximate cause of the collision. For reasons which follow, we answer the question in the affirmative.

[2] Proximate cause has been defined as "a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was proba-

ble under all the facts as they existed." *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. at 233, 311 S.E. 2d at 565. *See also Kanoy v. Hinshaw*, 273 N.C. 418, 160 S.E. 2d 296 (1968); *Green v. Tile Co.*, 263 N.C. 503, 139 S.E. 2d 538 (1965). Foreseeability of injury is thus an essential element of proximate cause, and this is true even though the act complained of is a violation of a safety statute. *McNair v. Richardson*, 244 N.C. 65, 92 S.E. 2d 459 (1956); *Aldridge v. Hasty*, 240 N.C. 353, 82 S.E. 2d 331 (1954).

The test of foreseeability as an element of proximate cause does not require that the actor should have been able to foresee the injury in the precise manner in which it actually occurred. Reasonable pre-vision is all that is legally required; the actor is not required to foresee events which are merely possible, but only those which are reasonably foreseeable. *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 311 S.E. 2d 559; *Bennett v. R.R.*, 245 N.C. 261, 96 S.E. 2d 31 (1957).

Proximate cause is an inference of fact to be drawn from other facts and circumstances. Only when the facts are all admitted and only one inference may be drawn from them will the court declare whether an act was the proximate cause of an injury or not. *Conley v. Pearce-Young-Angel Co.; Rutherford v. Pearce-Young-Angel Co.*, 224 N.C. 211, 29 S.E. 2d 740 (1944). However, because that is rarely the case, what is the proximate cause of an injury is ordinarily a question for the jury. *Id.*

The evidence, in the light most favorable to the defendant, shows that the accident occurred on a paved two-lane rural road, running in a generally east-west direction. From the driveway near where plaintiff stopped his truck, there was a clear, unobstructed view of approximately 1,200 feet in each direction. The plaintiff testified that the sun did not bother him as he pulled out into the road and parked his truck. The defendant was traveling in a westerly direction. He testified that he saw the truck as he topped the hill and approached the area, but "could not tell whether it was on the pavement or not." The sun, which was bothering him as he got to the top of the hill, was virtually blinding him as he got midway down the hill. Nonetheless, he proceeded by following the center line down the hill, traveling, according to plaintiff's witness, at sixty to sixty-five miles per hour. Defendant left no skid marks and did not swerve into the opposite lane

of travel to avoid plaintiff's truck. As plaintiff correctly notes in his brief, when the principles of proximate causation are applied to the instant case, the issue becomes whether a person of ordinary prudence in the plaintiff's position would have foreseen that an accident, or some generally injurious consequence would occur under the facts as they existed.

It is well settled that there may be more than one proximate cause of an injury. *Batts v. Faggart,* 260 N.C. 641, 133 S.E. 2d 504 (1963). *See generally* 9 Strong's N.C. Index 3d, Negligence, § 9. Where the second actor does not become apprised of the existence of a potential danger created by the negligence of an original tort-feasor until his own negligence, added to that of the existing perilous condition, has made the accident inevitable, the negligent acts of the two tort-feasors are contributing causes and proximate factors in the happening of the accident. *Caulder v. Gresham,* 224 N.C. 402, 30 S.E. 2d 312 (1944); *Powers v. Sternberg,* 213 N.C. 41, 195 S.E. 88 (1938). *See also King v. Allred,* 309 N.C. 113, 305 S.E. 2d 554.

In order to insulate the negligence of one party, the intervening negligence of another must be such as to break the sequence or causal connection between the negligence of the first party and the injury, so as to exclude the negligence of the first party as one of the proximate causes of the injury. *Batts v. Faggart,* 260 N.C. 641, 133 S.E. 2d 504; *Riddle v. Artis,* 243 N.C. 668, 91 S.E. 2d 894 (1956). An efficient intervening cause is a new proximate cause. It must be an independent force which entirely supersedes the original action and renders its effect in the chain of causation remote. *Hairston v. Alexander Tank & Equipment Co.,* 310 N.C. 227, 311 S.E. 2d 559; *Harton v. Telephone Co.,* 141 N.C. 455, 54 S.E. 299 (1906). The test by which the negligent conduct of one is to be insulated as a matter of law by the independent negligent act of another, is reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resultant injury. *King v. Allred,* 309 N.C. 113, 305 S.E. 2d 554; *Riddle v. Artis,* 243 N.C. 668, 91 S.E. 2d 894; *Butner v. Spease,* 217 N.C. 82, 6 S.E. 2d 808 (1940). Put another way, in order for the conduct of the intervening agent to break the sequence of events and stay the operative force of the negligence of the original wrongdoer, the intervening conduct must be of such nature and kind that the original wrongdoer had no reasonable ground to anticipate it. *Rid-*

*dle v. Artis*, 243 N.C. 668, 91 S.E. 2d 894; *Balcum v. Johnson*, 177 N.C. 213, 98 S.E. 532 (1919).

We observed in *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 311 S.E. 2d 559, that the law of proximate cause does not always support the generalization that the misconduct of others is unforeseeable.

> The intervention of wrongful conduct of others may be the very risk that defendant's conduct creates. In the absence of anything which should alert him to the danger, the law does not require a defendant to anticipate specific acts of negligence of another. It does, however, fix him with notice of the exigencies of traffic, and he must take into account the prevalence of that "occasional negligence which is one of the incidents in human life." (Citations omitted.)

*Id.* at 234, 311 S.E. 2d at 565.

Under the facts of this case, it cannot be said as a matter of law that defendant's conduct in continuing to drive in a westerly direction down the two-lane paved road while blinded by the bright setting sun was reasonably unforeseeable to one in plaintiff's position. The risk of the intervention of this or other similar wrongful conduct is the very risk created by violation of the regulations governing stopping on the highway. Similarly, we are unable to say as a matter of law, as plaintiff would have us do, that the intervening conduct of the defendant was such as to break the sequence of events and stay the operative force of the plaintiff's original negligence, so as to render that negligence a remote, and not proximate, cause of the injury. A jury could reasonably infer from the facts in this case that plaintiff negligently stopped his truck partially on the main traveled portion of the highway; that without this original negligence, the collision would not have occurred; and the subsequent injury was clearly foreseeable, given the defendant's failure to keep a proper lookout and decrease his speed to avoid colliding with a vehicle on the highway. Accordingly, the trial court erred in failing to submit the issues of plaintiff's negligence per se and proximate causation to the jury.

Adams v. Mills

## C.

**[3]** Additionally, we find that the evidence was sufficient to take the case to the jury under ordinary common law principles of negligence, wholly apart from considerations of whether plaintiff's conduct violated N.C.G.S. 20-161. Defendant's responsive pleading was not limited to allegations of negligence per se in violation of the statute. The defendant also alleged and the evidence tended to show, plaintiff's negligence in parking his vehicle so that a portion of it protruded onto the westbound paved lane, at a time of day in which plaintiff knew, or should have known, that the setting sun was shining directly into the eyes of westbound motorists and in failing to park the vehicle entirely off the paved surface of the highway although there was ample opportunity and space to do so.

In a factually similar case, we found evidence of negligence sufficient to take the issue to the jury on common law principles. In *Pardon v. Williams*, 265 N.C. 539, 144 S.E. 2d 607 (1965), the evidence tended to show that the defendant had parked his car in the evening on a residential street within the corporate limits of Winston-Salem, at a point across from his residence. From where the vehicle was parked, two of the wheels extended three feet onto the paved surface of the road. Defendant chose to park at that spot, despite the existence of a nearby shoulder which was sufficiently wide to have parked the vehicle entirely clear of the paved surface of the road.

The driver of the car in which the plaintiff was riding was blinded by the lights of an oncoming car as he was going upgrade and before his vision cleared, the collision with the right front of the defendant's car occurred. We stated:

> [I]t is our opinion that there is sufficient evidence of negligence on the part of appellant to take the case to the jury on common law principles. Appellant's car was not disabled. He was in position to freely choose a parking place. About 15 feet south of the place where the car was parked, and about the same distance north thereof, the shoulder was 10 to 12 feet wide and the vehicle could have been parked so as to leave several feet clearance between it and the paved portion of the street. The jury could find that in the exercise of reasonable prudence and foresight appellant could have

foreseen that parking, without lights, at the narrowest place on the shoulder, partly on the pavement which was only 20 feet wide, would result in a collision with some vehicle blinded by meeting traffic, and that he was negligent in not choosing a more favorable place. "As a general rule, a motorist who desires to stop his vehicle or to leave it unattended on a street or highway is under a duty to select a suitable place, where his vehicle will not constitute an obstruction of the highway or a source of danger to other users of the highway; and this duty has been held to exist independently of any statutory requirement." 60 C.J.S., Motor Vehicles, § 330, p. 770.

265 N.C. at 541-42, 144 S.E. 2d at 609.

Similarly, in this case the jury could find that in the exercise of reasonable care and foresight plaintiff could have foreseen that parking on the narrower shoulder, partly on the pavement of the westbound lane of a two-lane paved highway, at sunset, would result in a collision with a vehicle whose driver was blinded by the bright setting sun, and that he was negligent in not choosing a more favorable place to park and attend to his tailgate. The fact that plaintiff's vehicle was not left unattended does not alter the risk posed by its location under the facts of this case.

In sum, the evidence was sufficient to warrant submission of the issue of contributory negligence to the jury. The factual questions raised as to whether plaintiff's vehicle was partially on or completely off the pavement, whether he was in violation of N.C.G.S. 20-161, whether his conduct was negligent under common law principles and whether the plaintiff's negligence was a proximate cause of the collision are properly for the jury, and not the trial court, to resolve. Therefore, the trial court erred in failing to instruct the jury on the issue of contributory negligence and in failing to set aside the verdict of the jury for that reason. We therefore reverse the ruling of the Court of Appeals and remand this case to that court for further remand to the Superior Court, Anson County for a new trial on the issue of liability only.

Reversed and remanded.