62 F.3d 1414
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Samuel Henry JACKSON; Myram S. Jackson, Plaintiffs-Appellees,
v.
OWENS-CORNING FIBERGLAS CORPORATION, Defendant-Appellant,
and
Armstrong World Industries, Incorporated; Keene
Corporation; Carey Canada, Incorporated;
Pittsburgh-Corning Corporation; Fibreboard Corporation; AP
Green Industries, Incorporated; AC & S Incorporated;
National Gypsum Company; Eagle-Picher Industries,
Incorporated; GAF Corporation; Combustion Engineering,
Incorporated; HK Porter Company; Rock Wool Manufacturing
Company, Incorporated; W.R. Grace Company; Babcock &
Wilcox Company; Manville Corporation Asbestos Disease
Compensation Fund, Defendants.
 No. 94-1735.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 5, 1995.
Decided: Aug. 3, 1995.
 
 ARGUED: Moffatt Grier McDonald, HAYNSWORTH, MARION, MCKAY & GUERARD, L.L.P., Greenville, SC, for Appellant.
 Allard Albert Alston, III, NESS, MOTLEY, LOADHOLT, RICHARDSON & POOLE, P.A., Barnwell, SC, for Appellees.
 ON BRIEF: James B. Pressly, Jr., HAYNSWORTH, MARION, McKAY & GUERARD, L.L.P., Greenville, SC, for Appellant.
 L. Joel Chastain, Desa A. Ballard, NESS, MOTLEY, LOADHOLT, RICHARDSON & POOLE, P.A., Barnwell, SC, for Appellees.
 Before WIDENER, WILKINSON, and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Samuel Jackson and his wife sued a number of asbestos manufacturers, claiming that their products caused Mr. Jackson's asbestosis. All the defendants settled except Owens-Corning Fiberglas Corporation ("OCF"). At trial the jury found OCF liable and returned a verdict of $373,000 for Mr. Jackson. OCF now appeals, and we affirm as follows.
 
 I.
 
 2
 First, OCF argues that the evidence adduced at trial was insufficient to support the jury's verdict that OCF's products caused Mr. Jackson's asbestosis. We disagree. Mr. Jackson produced more than enough evidence to permit a reasonable jury to conclude that OCF's products were a substantial factor in causing his incurable disease. Freeman v. Finney, 309 S.E.2d 531, 534 (N.C.App.1983), rev. denied, Freeman v. Freeman, 315 S.E.2d 702 (N.C.1984); Wyatt v. Gilmore, 290 S.E.2d 790, 791 (N.C.App.1982); Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1162-1164 (4th Cir.1986).
 
 
 3
 Starting in September 1971, Mr. Jackson worked as a mechanic for fifteen years at Duke Power Company's Cliffside Power Plant in North Carolina. The plant is composed of two "Units." The first is designated "Units 1-4," and the second is "Unit 5." Both units are individual buildings that surround power generation machinery.
 
 
 4
 Unit 5, for example, is a tall, rectangular building that stands on its square side. Each side of the square measures approximately 100 feet in length. Inside, there are twelve floors, but only the top and bottom floors are solid. Metal grates surrounding the 260-foot-tall boiler make up the intervening floors. This permanent scaffold-like arrangement permits mechanics like Mr. Jackson to service all 3,000 miles of pipe in the Unit.
 
 
 5
 Unit 5's generator and its 3,000 miles of pipe were being covered with asbestos-containing insulation when Mr. Jackson started work in September 1971. A black and white photograph taken in Unit 5 on December 10, 1971, showed stacked boxes of OCF's asbestos-containing Kaylo insulation, which was being used to insulate the pipes. Twenty-four invoices revealed that OCF delivered thousands of cartons of asbestos-containing Kaylo insulation to Unit 5 (where Mr. Jackson often worked) in 1971 and early 1972. Moreover, Mr. Jackson and at least one co-worker specifically identified Kaylo as one of the products they regularly used when helping to insulate pipe.
 
 
 6
 The insulating process required Mr. Jackson and his co-workers to cut and apply asbestos-containing products. "Naturally," Mr. Jackson explained, "when you sawed, it went everywhere." In addition, even when Mr. Jackson was not helping the insulators, he was still exposed to asbestos-containing dust. The open-grate design of Unit 5 allowed fibers released from insulation cut on any of the open floors in the building to drift down to expose those working below.
 
 
 7
 In the years after the insulation was installed, Jackson continued to work in Unit 5. During that time, Jackson often used a pneumatic wrench to remove large bolts from insulated pipes and equipment. This process, and repair operations performed by other workers in Unit 5, freed fibers from previously installed insulation. Thus, even years after the plant's initial construction, asbestos-containing fibers were at times released into the air inside Unit 5.
 
 
 8
 Two physicians, based on appropriate hypothetical questions about Mr. Jackson's exposure to asbestos-containing Kaylo (see Part II, below), offered their opinions that Kaylo was a substantial cause of Mr. Jackson's asbestosis.
 
 
 9
 On this evidence, we hold that a reasonable jury could find that OCF's asbestos-containing Kaylo insulation was a substantial factor in causing Mr. Jackson's asbestosis.
 
 II.
 
 10
 OCF's second assignment of error is, to a large degree, dependent on its failed claim that the exposure evidence was insufficient. OCF asserts that the trial court abused its discretion when it permitted Mr. Jackson's expert physicians to answer certain hypothetical questions. The questions asked the physicians to assume that Mr. Jackson was exposed to airborne fibers from asbestos-containing Kaylo insulation on a frequent basis during his career at Unit 5. OCF maintains that these hypotheticals injected reversible error into the trial because they were inaccurate and because they omitted reference to any other asbestos-containing product used in Unit 5.
 
 
 11
 In its inaccuracy argument, OCF asserts that "[t]here was no evidence that the plaintiff was repeatedly and over a period of years exposed to asbestos-containing Kaylo." Brief of Appellant at 19. The record does not support this assertion. The photograph from December of 1971, the 24 invoices revealing that thousands of cartons of Kaylo were shipped directly to Unit 5, and the other exposure evidence discussed in Part I (above) all reveal that the hypotheticals were based on facts in evidence. OCF's argument that the hypothetical questions should have referred to the other asbestos-containing products used in Unit 5 also fails. On cross-examination, OCF's counsel was free to ask the experts whether knowing that Mr. Jackson was exposed to other asbestos products would have changed their view that Kaylo was a substantial factor in causing his asbestosis. In sum, we hold that the district court did not abuse its discretion when it permitted the experts to answer the hypothetical questions posed by plaintiffs' counsel.
 
 III.
 
 12
 In its third assignment of error, OCF argues that the district court abused its discretion when it refused to permit OCF to cross-examine Mr. Jackson about Duke Power's alleged failure to comply with federal safety (OSHA) regulations in the 1970s. The regulations, among other things, mandated reduced concentrations of asbestos dust in the workplace, required employers to post signs warning of the dangers associated with asbestos-contaminated dust, and required that workers use respirators when working with asbestos-containing materials.
 
 
 13
 OCF wanted to pursue this line of cross-examination to establish that Duke Power's failure to comply with the regulations constituted a superseding cause of Mr. Jackson's injuries. See Adams v. Mills, 322 S.E.2d 164, 172-173 (N.C.1984). The district court disallowed the questioning for two reasons. First, the court said that using OSHA regulations to prove intervening negligence in a failure to warn case would "turn OSHA on its head" because the OSHA regulations did not relieve OCF of its independent duty to warn. Second, the court said that Duke Power's failure to warn could not relieve OCF of liability because Duke Power's duty to warn arose from the same source as OCF's duty, specifically, the dangerousness of the product. Thus, the court reasoned that any negligent failure to warn on Duke Power's part would not constitute an intervening cause, but only a joint proximate cause.
 
 
 14
 Under North Carolina law, we think the district court was correct in holding that Duke Power's negligence, if any, could not break the chain of causation so as to relieve OCF in this case of its responsibility to warn Mr. Jackson of the dangers associated with its asbestos-containing product. To constitute an "efficient intervening cause," a second tortfeasor's actions must "be an independent force which entirely supersedes the original action and renders its effect in the chain of causation remote." Id. at 173 (citation omitted).
 
 
 15
 The intervening cause rule contemplates a situation where the "effect" of the first tortfeasor's action is rendered "remote" by the action of the second. That is not possible in this case because OSHA's regulations were not even in effect during the first ten months that Mr. Jackson was regularly exposed to asbestos-contaminated Kaylo dust. That length of regular exposure was sufficient to permit this case to go to the jury on the issue of causation. Roehling v. National Gypsum Co. Gold Bond Bldg. Products, 786 F.2d 1225, 1226-27 (4th Cir.1986) (permitting a jury to pass on a claim that six months' regular exposure to asbestos-containing products might have caused a decedent's mesothelioma).* Therefore, in light of Mr. Jackson's regular exposure to Kaylo prior to the effective date of the OSHA regulations, we hold that nothing Duke Power did could have "entirely" superseded OCF's negligence and rendered it "remote." Adams, 322 S.E.2d at 173. Therefore, the district court did not abuse its discretion in prohibiting OCF from cross-examining Mr. Jackson about Duke Power's alleged non-compliance with OSHA regulations.
 
 IV.
 
 16
 OCF's last assignment of error involves evidence which documented OCF's knowledge of the dangers associated with asbestos dating back into the 1940s. Specifically, OCF argues that "[b]ecause Mr. Jackson could only have been exposed beginning in 1971, OCF's knowledge and activities well before that date were obviously irrelevant and could only serve to inflame the jury." Brief of Appellant at 23. We disagree. This evidence was relevant and not unduly prejudicial. See Fed.R.Evid. 403. As the district court noted, OCF's duty to warn Mr. Jackson arose from the harmful and dangerous properties of its product. To make his case, Mr. Jackson was entitled to demonstrate that the dangers of asbestos fibers were known to OCF before he started working.
 
 V.
 
 17
 We affirm the judgment of the district court.
 
 AFFIRMED
 
 
 *
 Both physicians who testified for Mr. Jackson noted that a massive exposure for even a relatively short period of time could have caused irreversible changes in Mr. Jackson's lungs that would have led to asbestosis