James W. GEIGER, Plaintiff,

v.

**GUILFORD COLLEGE COMMUNITY VOLUNTEER FIREMEN'S ASSOCIATION, INC., Defendant.**

Civ. A. No. C–86–208–G.

United States District Court, M.D. North Carolina, Greensboro Division.

Aug. 25, 1987.

Walter Clark and Clyde Rollins, of Turner, Rollins, Rollins & Clark, Greensboro, N.C., for plaintiff.

Joseph Moss and Peter Pappas of Kleemeier, Hagan, Hannah & Fouts, Greensboro, N.C., for defendant.

William L. Young, of Smith, Helms, Mulliss & Moore, Greensboro, N.C., for third party employer, Universal Petroleum.

## MEMORANDUM OPINION AND ORDER

GORDON, Senior District Judge:

This matter comes before the court on defendant's motion to dismiss, or, in the alternative, for summary judgment.

## FACTS

In July 1983, plaintiff James Geiger was employed as a tank repairman and cleaner by Universal Petroleum. At that time, Universal Petroleum performed tank cleaning and repair services for certain Shell facilities. On July 11, 1983, plaintiff reported to a Shell facility in Guilford County to clean and repair a 40,000 barrel gasoline tank. The tank was approximately 40 feet high and 84 feet in diameter.

Shell employees had drained most of the gasoline from the tank. Approximately 1600 gallons remained. A small portion of this gasoline was on top of a floating pan. The majority of the gasoline was below the pan. Plaintiff's job required him to climb into the tank and down to the pan. There plaintiff was to suction gasoline with a pump and hose from the top of the pan and redistribute the gasoline into the area below the pan. Additional workmen were next to pump the gasoline stored below the pan into another tank. Finally, plaintiff was to clean and repair the tank.

While working inside the tank, plaintiff and another worker succumbed to the gasoline vapors and were rendered unconscious. A co-worker discovered the unconscious men and notified Shell employees of the situation. In turn, the Shell employees called the authorities for assistance. Pursuant to this call, defendant Guilford College Community Volunteer Firemen's Association (fire department) received an alarm indicating that "two persons were unconscious in a 'tanker.'" The fire department responded to this alarm and, after evaluating the situation, decided to lift the men out of the tank through a hatch in the roof of the tank. The firemen lowered a rope into the tank, secured the rope under plaintiff's arms with a bowline knot, and vertically lifted the plaintiff. As the firemen were lifting the plaintiff, the rope slipped from plaintiff's body and plaintiff fell to the floating pan. The firemen then relowered the rope into the tank, resecured it under plaintiff's arms, lifted plaintiff out of the tank, and turned plaintiff over to Guilford County Emergency Medical Service for care.

## DISCUSSION

Defendant asks the court to decide four issues: (1) whether N.C.G.S. § 69–39.1 limits defendant's liability; (2) whether sovereign immunity limits defendant's liability; (3) whether certain provisions of the North Carolina Workers' Compensation Act apply in this case; and (4) whether plaintiff's employer, Universal Petroleum, was negligent, and whether this negligence joined and concurred with the alleged negligence of the fire department in producing plaintiff's injuries.

### I. *N.C.G.S. § 69–39.1 Does Not Limit The Fire Department's Liability.*

N.C.G.S. § 69–39.1(b) provides:

A rural fire department or a fireman who belongs to the department shall not be liable for damages to persons or prop-

erty alleged to have been sustained and alleged to have occurred by reason of an act or omission, either of the rural fire department or of the fireman *at the scene of a reported fire,* when that act or omission *relates to the suppression of the reported fire* by the department or the fireman unless it is established that the damage occurred because of gross negligence, wanton conduct or intentional wrongdoing of the rural fire department or the fireman.

(emphasis supplied). The court determines that this statute does not limit defendant's liability under the facts of this case. The alleged negligence of the defendant did not occur "at the scene of a reported fire." Defendant admits in its brief that it responded to an alarm indicating that "two persons were unconscious in a 'tanker.'" The Shell Oil employees who called for assistance did not report a fire. In addition, defendant's acts did not relate "to the suppression of [a] reported fire." No fire occurred at the Shell facility.

Defendant nonetheless argues for the statute's applicability. Defendant notes that, given the location of the injured men in a gasoline tank, there was great danger of a fire occurring. Defendant further argues that the court should broadly construe the statute to limit the liability of fire departments for all duties fire departments ordinarily undertake. The court cannot adopt defendant's arguments. The wording of the statute clearly requires a "reported fire" and an act or omission relating to the "suppression" of the "reported fire" before the limitation of liability applies. The possibility of a fire occurring is insufficient. A court cannot ignore clear and precise statutory language. Judicial interpretation allows a court to resolve statutory ambiguities, not create them. If this court were to view N.C.G.S. § 69–39.1(b) as encompassing the facts of this case, the court would be closer to engaging in judicial legislation than judicial interpretation.

Nonetheless, the court sympathizes with defendant's position. A fire department's duties extend to areas other than the "suppression" of "reported fires," a fact the North Carolina legislature implicitly recognized when it enacted N.C.G.S. § 69–25.17 (approving expenditure of funds, derived from taxes levied under N.C.G.S. § 69–25.4 for furnishing fire protection, to provide rescue and ambulance services) and N.C. G.S. § 69–39.1(c) (limiting liability of volunteer firemen and rescue squad workers for medical care provided "at the scene of a fire"). Rescue services of the nature performed in this case seem just as deserving of limited liability as services performed at the scene of a reported fire. Moreover, the court is reticent to issue rulings which might discourage fire departments from providing worthwhile services. But, under established precedent, the court is bound to follow North Carolina law [1] and N.C.G.S. § 69–39.1(b) does not limit defendant's liability under the facts of this case.

## II. The Fire Department Is Immune From Liability For Any Judgment In Excess of $300,000.00.

■ N.C.G.S. § 69–25.5 authorizes boards of county commissioners to provide fire protection by contracting with any incorporated nonprofit, volunteer, or community fire department. On June 30, 1983, Guilford County employed defendant, a nonprofit corporation, to furnish fire protection to the Guilford College Fire Protection District. N.C.G.S. § 69–25.8 grants every county performing statutorily authorized fire protection services with the same immunities that "a county would enjoy in the operation of a county fire department within the county, or a municipal corporation would enjoy in the operation of a fire department within its corporate limits." In essence, this statute ensures that all fire departments, engaged in activities authorized by the "fire protection" sections (Chapter 69) of the North Carolina General Statutes, receive equivalent statutory and sovereign immunity.

---

1. In section "III" of this opinion, the court determines that North Carolina law applies to the

facts of this case.

The parties do not appear to dispute that defendant's rescue of James Geiger was a service Chapter 69 authorizes. The rescue occurred within the defendant's geographical protection zone and N.C.G.S. §§ 69–25.-17 and 69–39.1(c) recognize that fire departments provide rescue and ambulance services. Accordingly, defendant, as a fire department engaged in statutorily authorized services, is entitled to receive the same immunity normally afforded to other fire departments in North Carolina.

North Carolina adheres to the common law rule of sovereign immunity. A plaintiff cannot maintain an action against the state unless the state expressly consents to be sued. *Guthrie v. North Carolina State Ports Authority*, 307 N.C. 522, 534, 299 S.E.2d 618, 625 (1983). Sovereign immunity extends to political subdivisions of a state. Municipal corporations, as subdivisions of the state[2], are thus not ordinarily liable for injuries caused by their "negligence or nonfeasance in the exercise of functions essentially governmental in character." *Valevais v. City of New Bern*, 10 N.C.App. 215, 218, 178 S.E.2d 109, 111 (1970).

Guilford County is a municipal corporation and the North Carolina courts have recognized that the "operation of a fire department is a function which a municipality undertakes in its governmental capacity." *Id.*, 10 N.C.App. at 218, 178 S.E.2d at 112 (citing *Mabe v. Winston-Salem*, 190 N.C. 486, 130 S.E. 169 (1925)). Defendant is thus entitled to sovereign immunity.

A county's sovereign immunity is absolute unless a statute modifies the immunity. N.C.G.S. § 153A–435(a) provides that the purchase of liability insurance "waives the county's governmental immunity, to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function." Defendant has purchased insurance coverage with policy limits of $300,000.00 and has thus waived its governmental immunity to the extent of $300,000.00.

*III. North Carolina Law, Including The Provisions Of N.C.G.S. § 97–10.-2(e), Applies In This Action.*

The Rules of Decision Act, 28 U.S.C. § 1652 (1966), and the rule of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), require a federal court sitting in a diversity case to apply the forum state's substantive law and federal procedural law. An adjunct to this rule mandates that a federal court apply the choice of law rules of the state where the federal court sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). *See Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975). Accordingly, this court must apply North Carolina law to the substantive issues this action presents unless the North Carolina choice of law rules indicate that application of another state's law is appropriate.

■ Plaintiff herein complains of a violation of tort law. Under North Carolina's choice of law rules, the law of the state where the tort occurs governs all substantive issues in the case. *See* Wurfel, *Choice of Law Rules in North Carolina* 48 N.C.L. Rev. 243, 247 (1970). In determining the place of the tort, the North Carolina courts deem the tort to occur at the place where the last event takes place that is necessary to render the actor liable. Since injury is the last element of a tort, North Carolina law essentially applies the law of the place of injury. *Santana, Inc. v. Levi Strauss and Co.*, 674 F.2d 269, 272 (4th Cir.1982). *See Smith v. Cessna Aircraft Co., Inc.*, 571 F.Supp. 433, 435 (M.D.N.C.1983). The alleged negligence and injury about which Geiger complains occurred in North Carolina. North Carolina substantive law thus applies to plaintiff's claims.

Even though North Carolina law applies to all substantive issues in this action, defendant asks the court to declare specifical-

---

**2.** A "municipal corporation" is a subordinate agency a state creates to assist in the civil government of the territory and people embraced in the municipality's limits. Cities and counties are the most common, but not the only, examples of municipal corporations. *See generally,* 9 Strong's N.C. Index 3d, *Municipal Corporations* § 1 (1977).

ly that the provisions of N.C.G.S. § 97–10.-2(e) apply to these facts. This statute provides in pertinent part:

> The amount of compensation and other benefits paid or payable on account of [the worker's] injury or death shall be admissible in evidence in any proceeding against [a] third party. In the event that said amount of compensation and other benefits is introduced in such a proceeding the court shall instruct the jury that said amount will be deducted by the court from any amount of damages awarded to the plaintiff. If the third party defending such proceeding, by answer duly served on the employer, sufficiently alleges that actionable negligence of the employer joined and concurred with the negligence of the third party in producing the injury or death, then an issue shall be submitted to the jury in such case as to whether actionable negligence of the employer joined and concurred with the negligence of the third party in producing injury or death.... If the verdict shall be that actionable negligence of the employer did join and concur with that of the third party in producing injury or death, then the court shall reduce the damages awarded by the jury against the third party by the amount which the employer would otherwise be entitled to receive therefrom by way of subrogation hereunder and the entire amount recovered, after such reduction, shall belong to the employee or his personal representative free of any claim by the employer....

Defendant's concern that this statute might not apply in this case apparently stems from *Leonard v. Johns-Manville Sales Corp.,* 309 N.C. 91, 305 S.E.2d 528 (1983). Defendant's concern is understandable. The court's opinion in *Leonard* winds an anfractuous path. The court rules that if, as here, the plaintiff has not recovered under the North Carolina Workers' Compensation Act, the provisions of N.C.G.S. § 97–10.2(e) are not controlling in an action by a plaintiff employee against an allegedly negligent third party defendant. In seeming contrast, the court's next sentence concludes that the same third par-

ty defendant may allege the contributory negligence of the plaintiff's employer as a defense for the same limited purposes and by the same procedure set forth in N.C.G.S. § 97–10.2(e). *Id.,* 309 N.C. at 98, 305 S.E.2d at 533. Despite this confusing rhetoric, the end result, under *Leonard,* is that the provisions of N.C.G.S. § 97–10.2(e) govern in all actions by a plaintiff employee against a third party as a matter of North Carolina law, even where the plaintiff has recovered workers' compensation under the workers' compensation laws of another state.

The court's ruling in *Leonard* appears entirely proper when viewed in connection with the history of § 97–10.2(e). Early North Carolina law allowed an employer, who paid workers' compensation benefits to an injured employee, to recover the amount paid from a third party whose actions were a cause of the employee's injury. The courts, however, did not favor allowing the employer to recover where the employer's acts joined with the acts of the third party to cause the employee's injury. The courts' disdain for allowing the employer to recover in this situation was an extension of the time-honored maxim that "no one shall profit by his own wrong." Accordingly, in *Brown v. Southern Ry. Co.,* 204 N.C. 668, 670, 169 S.E. 419, 420 (1933), the North Carolina Supreme Court held that where an employer seeks to recover, from a third party tortfeasor, the amount of workers' compensation benefits paid by the employer to its employee, the third party may raise the employer's contributory negligence in causing the employee's injury as a defense to the employer's action. N.C.G.S. § 97–10.2(e) represents a codification of the *Brown* holding. *See Leonard,* 309 N.C. at 101, 305 S.E.2d at 535.

In essence then, § 97–10.2(e) delineates the rights between parties jointly liable—the employer under workers' compensation law and the third party under traditional tort law—for a tort. The North Carolina Court of Appeals recently held that the right of one tortfeasor to obtain contribution from another tortfeasor is a substan-

tive right governed by the law of the place of the tort. *Great West Casualty Co. v. Fletcher*, 56 N.C.App. 247, 248, 287 S.E.2d 429, 430 (1982). By analogy, the instant case also involves a substantive right governed by the law of the place of the tort because N.C.G.S. § 97–10.2(e) essentially delineates whether one wrongdoer can obtain contribution from another wrongdoer.

■ Indeed, *Leonard* states that even if another state's law clearly prohibits a defendant from litigating an employer's negligence for the limited purposes allowed under North Carolina law and even if the North Carolina choice of law rules dictate that the court apply the foreign state's law, the governmental interests and public policy of North Carolina mandate the application of North Carolina law. *Leonard*, 309 N.C. at 96–97 n. 1, 305 S.E.2d at 532 n. 1.[3] The Florida statute that plaintiff and plaintiff's employer suggest as controlling directly contradicts N.C.G.S. § 97–10.2(e).[4] The legislature's enactment of § 97–10.2(e) evidences a strong public policy in North Carolina of prohibiting a negligent employer from recouping any workers' compensation benefits paid to an injured employee. It is not the purpose of the Workers' Compensation Act to exculpate or absolve employers from the consequences of their negligent conduct. *Tscheiller v. National Weaving Co.*, 214 N.C. 449, 452, 199 S.E. 623, 625 (1938). Therefore, even if this court found Florida law to apply generally in this case, the *Leonard* decision and public policy of North Carolina would require the court to apply the principles embodied in N.C.G.S. § 97–10.2(e).

*IV. Whether Plaintiff's Employer Was Negligent And Whether This Negligence Joined and Concurred With The Alleged Negligence Of Defendant Is An Issue Of Fact That Is Not Appropriate For Resolution On Summary Judgment.*

■ Whether a party to an action acted negligently is ordinarily an issue for a jury to decide. A court will rule that a party was negligent, as a matter of law, only where exceptional factual circumstances exist or where the party's actions constitute "negligence *per se.*" Exceptional circumstances are not present in this suit. Defendant has noted circumstances suggesting that plaintiff's employer may have been negligent. But these circumstances do not lead to an irrefutable conclusion that the employer was negligent. Reasonable men may disagree about whether not wearing a safety harness is negligent just as reasonable men disagree on whether not wearing a automobile seat belt is negligent. The conclusion of negligence or contributory negligence in this case should thus be resolved by a jury. Moreover, even if this court ruled that the employer acted negligently, it is an issue of fact for the jury to decide as to whether the negligent act was a proximate cause of the plaintiff's injury. *Adams v. Mills*, 312 N.C. 181, 193, 322 S.E.2d 164, 172 (1984).

Similarly, the doctrine of negligence *per se* is inapplicable to this case. Defendant has presented evidence showing that the employer violated certain Occupational Safety and Health Act of 1970 (OSHA) regulations. But a violation of OSHA regulations is not negligence *per se* under North Carolina law. *Cowan v. Laughridge*

---

**3.** It is a well established principle that a forum will refuse to give effect to a foreign law if to do so would contravene the positive public policy of the law of the forum. 16 Am.Jur.2d *Conflict of Laws* § 17 (1979). This principle is legally permissible because a state's recognition of a foreign state's law, subject to full faith and credit considerations, is not obligatory. "No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived." *Hilton v. Guyot*, 159 U.S. 113, 163, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). The choice of applicable law thus rests in the discretion of the tribunals of the forum.

**4.** Section 440.39 of the Florida Workers' Compensation Act allows an employer and its insurance carrier to file notice of payment of compensation and medical benefits to the employee in a civil action commenced by the employee against a third party. This notice of payment, under Florida law, constitutes a lien upon any judgment or settlement the employee recovers. Subject to certain statutorily authorized deductions, the employer recoups from the judgment or settlement 100 percent of the compensation it has paid and the compensation it will owe in the future.

*Construction Co.,* 57 N.C.App. 321, 324–25, 291 S.E.2d 287, 289–90 (1982).

Plaintiff's employer argues that this case involves a "helpless plaintiff" and that the court, therefore, need *only* consider whether defendant negligently failed to avoid harming plaintiff. The court rejects this argument. The "helpless plaintiff" doctrine is a factually specific rendition of the long recognized doctrine of "last clear chance." *See* Restatement (Second) of Torts § 479 (1965). Last clear chance, by definition, only applies in situations where a plaintiff was negligent. And as the court has already stated, the facts of this case do not establish any party's negligence as a matter of law. The last clear chance doctrine remains, however, a viable argument that plaintiff may choose to assert at trial.

## CONCLUSION

The court finds that North Carolina law, including N.C.G.S. § 97–10.2(e), should apply in this case. The court, however, will not issue an order to that effect since there is no motion for a declaratory judgment before the court. In regard to the motions now before the court, IT IS ORDERED that governmental immunity limits defendant's liability in this action to $300,000.00.[5] In all other respects, IT IS ORDERED that defendant's motion to dismiss and motion for summary judgment be, and the same hereby are, DENIED.

---

5. In calculating defendant's liability at trial, the court will decrease the amount of any verdict by the amount, if any, defendant proves that N.C.G.S. § 97–10.2(e) authorizes. If this adjusted total exceeds $300,000.00, the court will further reduce the amount of the verdict to $300,000.00 and, if proper, enter judgment in that amount.