C. MELVIN BARBER, Administrator of the ESTATE OF KATHY P. BARBER, Deceased, Plaintiff-Appellant v. DANIEL J. CONSTIEN, M.D., and WAN SOO CHUNG, M.D., Defendants-Appellees

No. COA96-1493

(Filed 4 August 1998)

## 1. Medical Malpractice—intervening negligence—subsequent medical treatment

The Court of Appeals declined to adopt the rule cited by plaintiff from other jurisdictions that subsequent negligent medical treatment is foreseeable as a matter of law and that it is improper to instruct the jury on intervening causation when the act relied upon by the defendant is subsequent negligent medical treatment.

## 2. Medical Malpractice—instructions—intervening negligence

The trial court did not err in a medical malpractice action against two doctors by giving an instruction on intervening negligence where the alleged negligence of other health care providers occurred either prior to or concurrent with the involvement of this defendant. The instruction on insulating negligence was general and not specific to each defendant; however, the instruction given was erroneous and reversed elsewhere.

## 3. Medical Malpractice—instructions—intervening negligence

The trial court erred in a medical malpractice action because the North Carolina Pattern Jury Instruction used by the court to instruct on intervening negligence lacked any reference to foreseeability. The test for determining when one actor's negligent conduct is insulated as a matter of law by the independent negligent act of another is reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resulting injury. Except in cases so clear that there can be no two opinions among fair minded people, it ordinarily should be left to the jury to determine whether the intervening act and resulting injury were such that the original wrongdoer could reasonably have expected them to occur as a result of his own negligence.

Appeal by plaintiff from judgment entered 2 November 1995 by Judge Joe Freeman Britt in Martin County Superior Court. Heard in the Court of Appeals 27 August 1997.

*Wade E. Byrd, for plaintiff-appellant.*

*Walker, Barwick, Clark & Allen, L.L.P., by Robert D. Walker, Jr. and O. Drew Grice, Jr., for defendant-appellee Wan Soo Chung, M.D.*

*Harris, Shields, Creech and Ward, P.A., by C. David Creech, for defendant-appellee Daniel J. Constien, M.D.*

JOHN, Judge.

In this wrongful death action, the sole issue on appeal is whether the trial court properly charged the jury on intervening causation. Plaintiff contends, *inter alia*, that the court's instructions erroneously failed to reference the test of foreseeability. We agree and award plaintiff a new trial.

Pertinent facts and procedural history include the following: Plaintiff's wife, decedent Kathy Barber (Mrs. Barber), consulted defendant Dr. Daniel Constien (Dr. Constien), complaining of pain between her shoulder blades and nausea. After taking Mrs. Barber's history and conducting a physical examination, Dr. Constien diagnosed her condition as a flu-like viral syndrome. Dr. Constien directed his nurse to administer injections for nausea and for pain, and he wrote prescriptions for medication to address these symptoms. Mrs. Barber was instructed to return upon any significant worsening of her situation.

Late Sunday evening, it became necessary for plaintiff to take Mrs. Barber to the emergency room at Martin General Hospital (the hospital). Dr. Charles R. Merritt (Dr. Merritt) diagnosed Mrs. Barber's condition as pneumonia and directed that she be admitted. Dr. Merritt telephoned defendant Dr. Wan Soo Chung (Dr. Chung), a family practitioner on call for Dr. Constien, and advised him of this circumstance. Dr. Chung ordered administration of Phenegran and Demerol to Mrs. Barber for nausea and pain.

At 1:00 a.m. on Monday, Mrs. Barber was admitted to the hospital. Nurse Adeline Godard (Nurse Godard) noticed Mrs. Barber was still coughing and called Dr. Chung to request additional medication. Dr. Chung prescribed Nucofed, a codeine-based cough suppressant.

Nurses periodically observed Mrs. Barber throughout the night. At 4:00 a.m., she was discovered to be without vital signs and, despite

attempts to resuscitate her, was pronounced dead at 4:20 a.m. Dr. Chung arrived at the hospital shortly thereafter.

Plaintiff filed the instant complaint 2 March 1994, naming Drs. Constien and Chung, Roanoke Family Medicine Associates, Coastal Emergency Physicians, P.A., J. E. Nicholson, M.D. and Dr. Merritt as defendants. Prior to trial, plaintiff voluntarily dismissed the claims against all defendants except Drs. Constien and Chung.

At trial, plaintiff's experts testified Drs. Constien and Chung failed to meet the applicable standard of care in their treatment of Mrs. Barber, and that the physicians' negligence proximately caused Mrs. Barber's death from respiratory failure. According to plaintiff's witnesses, Dr. Constien should have recognized from Mrs. Barber's vital signs that she had a more severe illness than the common flu, and he failed to order additional tests which would have saved her life. Dr. Chung was described as having been negligent in failing to order tests to determine Mrs. Barber's oxygenation level, such as arterial blood gases, failing to direct that she be given oxygen, failing to come to the hospital to examine Mrs. Barber, and finally ordering a combination of drugs which exacerbated Mrs. Barber's respiratory problems.

Defendants' witness Dr. M. G. F. Gilliland (Dr. Gilliland), the medical examiner who performed Mrs. Barber's autopsy, testified Mrs. Barber was afflicted with a viral infection which, coupled with an underlying vulnerable heart due to pre-existing scarring, predisposed her to a cardiac arrhythmia which in fact occurred, claiming her life. A cardiac arrhythmia is a disturbance in the rhythm patterns of the heart which cause the heart to discontinue beating. Dr. Gilliland testified the medications ordered by Dr. Chung did not play a role in the death of Mrs. Barber.

Witnesses for the defense further testified Drs. Constien and Chung complied with the applicable standard of care. Defendants also elicited testimony that Dr. Merritt had deviated from the standard of care in failing to order blood gases, and that Nurse Godard deviated from the standard of care by administering Demerol and failing to contact Dr. Chung and question his order.

At the charge conference, defense counsel requested that the jury be instructed on intervening causation, tendering to the trial court North Carolina Pattern Instruction (N.C.P.I.)—Civil 102.28, entitled "Proximate Cause—Insulating Acts of Negligence." Over plaintiff's objection, the court charged the jury in the following manner:

BARBER v. CONSTIEN

[130 N.C. App. 380 (1998)]

However, members of the jury, a natural and continuous sequence of causation may be interrupted or broken by the negligence of a second person. This occurs when a second person's negligence causes its only [sic] natural and continuous sequence which interrupts, breaks, displaces or supersedes the consequences of the first person's negligence. Under such circumstances the negligence of the second person would be the sole proximate cause of death and the negligence of the first person would not be a proximate cause of death.

Parenthetically, we note the parties appear to assume, and we agree, that the word "only" in the second sentence of the instruction is a transcription error for the word "own" set out in N.C.P.I.—Civil 102.28.

The jury returned a verdict in favor of defendants. In a 13 February 1996 order, the trial court denied plaintiff's subsequent "Motion for a New Trial" pursuant to N.C.R. Civ. P. 59. From this order and the judgment entered 2 November 1995, plaintiff entered timely notice of appeal.

Plaintiff asserts two primary bases for assigning error to the trial court's instruction on intervening negligence: (1) the evidence was insufficient as a matter of law to support such an instruction, and (2) the charge "incorrectly stated the law, and was prejudicially incomplete, misleading, and confusing."

[1] Turning to plaintiff's first contention, we observe initially that intervening negligence, also referred to in our case law as superseding or insulating negligence, is an elaboration of a phase of proximate cause. *Childers v. Seay*, 270 N.C. 721, 726, 155 S.E.2d 259, 263 (1967). Our Supreme Court has summarized the doctrine as follows:

An efficient intervening cause is a new proximate cause which breaks the connection with the original cause and becomes itself solely responsible for the result in question. It must be an independent force, entirely superseding the original action and rendering its effect in the causation remote. It is immaterial how many new elements or forces have been introduced, if the original cause remains active, the liability for its result is not shifted. Thus, where a horse is left unhitched in the street and unattended, and is maliciously frightened by a stranger and runs away: but for the intervening act, he would not have run away and the injury would not have occurred; yet it was the negligence

BARBER v. CONSTIEN

[130 N.C. App. 380 (1998)]

of the driver in the first instance which made the runaway possible. This negligence has not been superseded nor obliterated, and the driver is responsible for the injuries resulting. If, however, the intervening responsible cause be of such a nature that it would be unreasonable to expect a prudent man to anticipate its happening, he will not be responsible for damage resulting solely from the intervention. The intervening cause may be culpable, intentional, or merely negligent.

*Harton v. Telephone Co.*, 141 N.C. 455, 462-63, 54 S.E. 299, 301-02 (1906) (citation omitted).

With respect to Dr. Constien, plaintiff relies solely upon his contention that

[i]t is a hornbook principle of law that persons who wrongfully injure another are liable as a matter of law for the subsequent malpractice of health care providers who attempt to treat the original injury.

"The effect of the rule," plaintiff continues

is that subsequent negligent medical treatment is foreseeable as a matter of law. For that reason, it is improper to instruct the jury on intervening causation when the act relied upon by the defendant is subsequent negligent medical treatment.

Plaintiff concedes this rule has not been applied in North Carolina cases, but, citing authority from other jurisdictions, urges us to adopt it herein. We decline to do so, noting the cases cited by plaintiff generally hold intervening negligence to be a question for the jury, *see, e.g., Atlanta Obstetrics v. Coleman*, 398 S.E.2d 16 (Ga. 1990); *Carter v. Shirley*, 488 N.E.2d 16 (Mass. App. Ct.), *appeal denied*, 490 N.E.2d 803 (Mass. 1986); *Corbett v. Weisband*, 551 A.2d 1059 (Pa. Super. Ct. 1988), *appeal denied*, 571 A.2d 383 (Pa. 1989), and we therefore reject plaintiff's first assignment of error as concerns Dr. Constien.

[2] With reference to Dr. Chung, plaintiff's single argument asserts the intervening negligence instruction was erroneous because "in order to be considered an intervening cause, actions by another person must have occurred after the defendant's negligent act." Because the alleged negligence of other health care providers occurred either prior to Dr. Chung's involvement or concurrently therewith, plaintiff

maintains Dr. Chung thus could not be insulated from liability. However, the trial court's instruction on the issue of insulating negligence was a general one, not specific to each defendant. Moreover, in view of the result we reach below, we deem it unnecessary to address this issue further.

**[3]** Plaintiff's second contention, that the trial court's intervening negligence instruction comprised an incorrect statement of law, rests in the main upon the contention that the charge

> entirely omitt[ed] the test of foreseeability articulated in *Adams v. Mills* . . . leaving the jury with no guidance on how to determine when intervening negligence insulates the original negligent act and becomes the sole proximate cause of the injury.

We are compelled to agree.

Defendants respond initially that plaintiff waived any objection to the jury charge by failing to proffer a requested instruction. *See* N.C.R. App. P. 10(b)(2). Assuming *arguendo* defendants are correct, we in our discretion elect to address the merits of plaintiff's argument, *see* N.C.R. App. P. 2, because it involves pattern jury instructions used regularly throughout the state.

This Court has held the use of the N.C.P.I. to be "the preferred method of jury instruction." *Caudill v. Smith*, 117 N.C. App. 64, 70, 450 S.E.2d 8, 13 (1994), *disc. review denied*, 339 N.C. 610, 454 S.E.2d 247 (1995). However, a new trial may be necessary if a pattern instruction misstates the law. *See, e.g., Johnson v. Friends of Weymouth, Inc.*, 120 N.C. App. 255, 258-59, 461 S.E.2d 801, 804 (1995) (new trial required where N.C.P.I. on wrongful termination and employer's defense did not accurately reflect the law), *disc. review denied*, 342 N.C. 895, 467 S.E.2d 903 (1996).

In the instant case, it is undisputed that the N.C.P.I. on intervening negligence utilized by the trial court lacked any reference to foreseeability. However, a survey of our appellate cases on intervening negligence indicates that reasonable unforeseeability is the critical test for determining when intervening negligence relieves the original tortfeasor of liability. *See, e.g., Adams v. Mills*, 312 N.C. 181, 194, 322 S.E.2d 164, 173 (1984) ("[t]he test by which the negligent conduct of one is to be insulated as a matter of law by the independent negligent act of another, is *reasonable unforeseeability* on the part of the original actor of the subsequent intervening act and resultant injury") (emphasis added); *Childers*, 270 N.C. at 725, 155 S.E.2d at 262 ("if the

injurious result was not *reasonably unforeseeable*, the subsequent negligence would not insulate the initial negligence") (emphasis added); *Butner v. Spease and Spease v. Butner*, 217 N.C. 82, 89, 6 S.E.2d 808, 812 (1940) ("[t]he test by which the negligent conduct of one is to be insulated as a matter of law by the independent negligent act of another, is *reasonable unforeseeability*") (emphasis added); *Harton*, 141 N.C. at 463-64, 54 S.E. 299, 302 (1906) ("the test . . . is whether the intervening act and the resultant injury is one that the author of the primary negligence could have *reasonably foreseen and expected*") (emphasis added); *Muse v. Charter Hospital of Winston-Salem*, 117 N.C. App. 468, 476, 452 S.E.2d 589, 595 ("[t]he intervening cause . . . produces a result which would not otherwise have followed, and which *could not have been reasonably anticipated*") (emphasis added), *aff'd per curiam*, 342 N.C. 403, 464 S.E.2d 44 (1995).

Commentators on North Carolina tort law agree. *See* William S. Haynes, North Carolina Tort Law § 19-3(M) at 715 (1989) ("[t]o constitute an 'intervening cause' the facts must be of such an 'extraordinary rather than normal,' . . . nature, *unforeseeable in character*, in order to relieve the original wrongdoer of liability to the ultimate victim") (emphasis added) and David A. Logan and Wayne A. Logan, North Carolina Torts, § 7.30[2] at 166 (1996) (with respect to intervening negligence, "foreseeability is the operative notion").

Notwithstanding the absence of a reference to foreseeability in the trial court's instruction on intervening negligence, it is well settled that a jury charge must be construed in context, and isolated portions thereof "will not be held prejudicial error when the charge as a whole is correct." *Bowers v. Olf*, 122 N.C. App. 421, 428, 470 S.E.2d 346, 351 (1996) (citation omitted). However, viewing the instant jury charge in its entirety, we cannot say it served to compensate for the failure to refer to the critical element of foreseeability in the instruction on intervening negligence. The essential word "foresee" is found but once, in defining proximate cause, in the five paragraphs preceding that containing the instruction in question. Given the elusiveness of the concept of intervening negligence, we believe the jury was left without proper guidance to determine when intervening negligence insulates the original negligent act and becomes the sole proximate cause of injury. *Cf. Lonon v. Talbert*, 103 N.C. App. 686, 696-97, 407 S.E.2d 276, 283 (new trial granted where trial court failed to instruct on "insulating negligence" and "[t]he jury instruction on proximate cause mentioned foreseeability one time and gave little explanation as to the meaning of that term").

**BARBER v. CONSTIEN**

[130 N.C. App. 380 (1998)]

Our Supreme Court's decision in *Banks v. Shepard*, 230 N.C. 86, 52 S.E.2d 215 (1949) is instructive. Defendant therein complained of the following intervening negligence instruction:

> Now, the law recognizes the doctrine of intervening cause but the Court instructs you that an intervening cause will not relieve from liability when the prior or first negligence was the efficient cause of the injury. The test is not to be found in the number of intervening events but in their character and in the natural connection between the original wrong done and the injurious consequence and if the injury is the natural and probable consequence of the original negligent act or omission and is such as might reasonably have been foreseen as probable, the original wrongdoer is liable notwithstanding an intervening act or event. The Court has said that the rule applying in deciding this question is, was there an unbroken connection between the wrongful act and the injury, the original wrongful act. Was it a continuous operation? Do the facts make a natural whole or was there a new and intervening cause between the wrong and the injury? It must appear that the injury was the natural and proximate consequence of the negligence and that it ought to have been foreseen in the light of attending circumstances.

*Id.* at 90, 52 S.E.2d at 217-18. Notwithstanding inclusion of foreseeability of injury within the court's instructions, far more comprehensive than those at issue *sub judice*, a new trial was awarded because

> whether the negligent act of a defendant may be insulated as a matter of law by an independent act of another, depends on whether or not the original actor, "ought to have foreseen in the exercise of reasonable prevision or in the light of attending circumstances" that the plaintiff or some other person might be injured as a result and probable consequence of the negligence act.

*Id.* at 90-91, 52 S.E.2d at 218 (citations omitted). *See also Rattley v. Powell*, 223 N.C. 134, 25 S.E.2d 448 (1943) (new trial granted where "test applied in the instruction [on intervening negligence] . . . not wholly consistent with these rules," which applied test of foreseeability) and *Furr v. Pinoca Volunteer Fire Dept.*, 53 N.C. App. 458, 462, 281 S.E.2d 174, 177-78 (new trial where, *inter alia*, instructions "failed to relate the law of . . . insulating negligence"), *disc. review denied*, 304 N.C. 587, 289 S.E.2d 377 (1981).

BARBER v. CONSTIEN

[130 N.C. App. 380 (1998)]

Dr. Constien relies heavily on this Court's opinion in *Thomas v. Deloatch and Long v. Deloatch,* 45 N.C. App. 322, 263 S.E.2d 615, *disc. review denied,* 300 N.C. 379, 267 S.E.2d 685 (1980), wherein we considered, *inter alia,* a challenge to the trial court's instruction on insulating negligence. As Dr. Constien points out, this Court concluded the instruction was "adequate" and "complied with the law of this State on insulating negligence," *id.* at 333-34, 263 S.E.2d at 623, despite the apparent absence of any mention of foreseeability by the trial court (neither the quoted portion of the instruction set out in *Thomas* nor the opinion itself indicate the trial court included foreseeability within its charge on insulating negligence). We conclude that Dr. Constien's reliance on *Thomas* is unavailing.

First, *Thomas* is a decision of this Court while *Adams v. Mills,* 312 N.C. 181, 322 S.E.2d 164, *Banks v. Shepard,* 230 N.C. 86, 52 S.E.2d 215, and *Rattley v. Powell,* 223 N.C. 134, 25 S.E.2d 448, emanate from our Supreme Court. Notably, moreover, *Adams* is subsequent to *Thomas,* which itself neglects discussion of *Banks v. Shepard.* It is well established that this Court has the responsibility to follow Supreme Court decisions "until otherwise ordered" by that court. *Dunn v. Pate,* 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993) (citation omitted); *see also Cissell v. Glover Landscape Supply, Inc.,* 126 N.C. App. 667, 669-70, n.1, 486 S.E.2d 472, 473 (1997) (this Court "decline[d] to follow" earlier Court of Appeals decision "inconsistent with prior decisions of this Court and our Supreme Court"), *rev'd on other grounds,* 348 N.C. 67, 497 S.E.2d 283 (1998). To the extent that *Thomas* is inconsistent with the cited decisions of our Supreme Court, therefore, it lacks persuasive authority herein. *Id.*

Moreover, while not discussing the apparent lack of mention of foreseeability of injury in the charge at issue, the *Thomas* Court nonetheless acknowledged that, in rear end collision cases, "the test most often employed by North Carolina courts is foreseeability" to determine if intervening negligence relieves the first defendant of liability. *Thomas,* 45 N.C. App. at 334, 263 S.E.2d at 623 (citation omitted).

In sum, the test for determining when one actor's negligent conduct is insulated as a matter of law by the independent negligent act of another "is reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resultant injury." *Adams,* 312 N.C. at 194, 322 S.E.2d at 173. Further, "except in cases so clear that there can be no two opinions among fair-minded people," *Muse,* 117 N.C. App. at 476, 452 S.E.2d at 595-96, it ordinarily should be left

to the jury to determine "whether the intervening act and the resultant injury were such that the original wrongdoer could reasonably have expected them to occur as a result of his own negligence." *Id.* The trial court's instruction on intervening negligence herein having failed to guide the jury properly on that task, we order a new trial.

New trial.

Judges LEWIS and SMITH concur.