GEORGE M. MUTEFF, EXECUTOR OF THE ESTATE OF VIRGINIA C. MILLER, PLAINTIFF-APPELLANT v. INVACARE CORPORATION AND AMERICAN MOBILITY, LLC, DEFENDANTS-APPELLEES

No. COA11-495

(Filed 7 February 2012)

## 1. Negligence—insulating negligence—jury instruction—erroneous—not prejudicial

The trial court erred in a negligence case arising out of plaintiff decedent's death caused by burns sustained when her wheelchair caught on fire by instructing the jury on insulating negligence. However, the error did not prejudice plaintiff as it could not have tainted the jury's verdict on the warranty claims and the jury could not have found defendants liable for negligence after finding the wheelchair was not defective and the warnings accompanying the wheelchair were not inadequate.

## 2. Pretrial Proceedings—severance of claims—save time and expense—motion properly granted

The trial court did not abuse its discretion in a case arising out of plaintiff decedent's death caused by burns sustained when her wheelchair caught on fire by severing plaintiff's claim for unfair and deceptive trade practices (UDTP) from plaintiff's other claims. The trial court's grant of defendants' motion saved the parties and the trial court time and expense that would have been unnecessarily spent prosecuting and defending an UDTP claim that would have failed.

MUTEFF v. INVACARE CORP.

[218 N.C. App. 558 (2012)]

**3. Evidence—judicial notice—Texas Supreme Court opinion—
no error**

The trial court did not err in a case arising out of plaintiff
decedent's death caused by burns sustained when her wheelchair
caught on fire by taking judicial notice of the Texas Supreme
Court opinion *Whirlpool v. Camacho* and instructing the jury that
it was conclusive. The trial court merely took judicial notice that
the Texas Supreme Court had filed the opinion and plaintiff and
defendants examined and cross-examined plaintiff's expert thor-
oughly concerning the opinion.

Appeal by Plaintiff from judgment entered 10 November 2010,
order entered 17 December 2010, *nunc pro* tunc 27 September 2010,
and order entered 11 January 2011, by Judge Paul G. Gessner in
Superior Court, Wake County. Heard in the Court of Appeals 15
November 2011.

*Troutman Sanders LLP, by Gary S. Parsons, Gavin B. Parsons,
D. Martin Warf, John R. Gerstein, and Meredith Werner, for
Plaintiff-Appellant.*

*Hall, Rodgers, Gaylord & Millikan, PLLC, by Jonathan E. Hall
and Kathleen M. Millikan, for Defendants-Appellees.*

McGEE, Judge.

Virginia C. Miller (Ms. Miller) died on 22 November 2006 from
severe burns she sustained when her house caught fire. Ms. Miller suf-
fered from multiple sclerosis that adversely impacted her mobility and
independence. She was assisted during the day by in-home caregivers
from 9:00 or 10:00 a.m. until 5:00 or 6:00 p.m., but was alone at night.
In the spring of 2005, Ms. Miller purchased a Pronto M71 self-propelled
wheelchair (the wheelchair) from American Mobility, LLC (American
Mobility). The wheelchair was manufactured by Invacare Corporation
(Invacare), together with American Mobility (Defendants).

At approximately 7:51 a.m. on the morning of the fire, Ms. Miller
called 911 and informed the operator that her wheelchair was on fire
and she was trapped in the room with the wheelchair. Firefighters
arrived within minutes of the call and removed Ms. Miller from her
burning home. Due to the severity of her burns, Ms. Miller survived
less than a day after being admitted to the hospital.

MUTEFF v. INVACARE CORP.

[218 N.C. App. 558 (2012)]

George M. Muteff (Plaintiff), the executor of Ms. Miller's estate, filed this action against Defendants on 3 July 2008. In his complaint, Plaintiff alleged, *inter alia*, product liability claims for negligence and breach of the implied warranty of merchantability against Defendants. Plaintiff also alleged a claim for unfair and deceptive trade practices (UDTP) against Invacare. Plaintiff alleged that the wheelchair had a design defect in its wiring that caused the fire and death of Ms. Miller. Plaintiff also alleged that the materials used in the manufacture of the wheelchair were unreasonably flammable, and that Defendants should have warned Ms. Miller of the dangers posed by the alleged wiring defect and flammable materials. Defendants filed answers denying Plaintiff's claims. Defendants also asserted contributory negligence as an affirmative defense. Defendants argued that the fire started when Ms. Miller's metal necklace came into contact with exposed blades of the wheelchair's AC charger cord. Defendants' theory was that Ms. Miller secured the charger cord to the arm of the wheelchair with her necklace in order to allow her to more easily plug the charger cord into an extension cord at night for charging. Defendants argued that, due to Ms. Miller's waning hand strength, she did not fully engage the charger cord into the extension cord, thereby leaving a gap into which the necklace slid, touched the live blades of the plug, and caused a short that resulted in the fire. After the fire, the necklace was found fused to the plug.

The trial court heard various motions on 20 September 2010. The trial court granted Defendants' motion to bifurcate the trial by leaving the claim for UDTP until after the other issues had been decided. The trial court also granted Defendants' motion asking the trial court to take judicial notice of the authenticity of a Texas Supreme Court opinion in which the testimony of one of Plaintiff's expert witnesses had been held to be insufficiently supported by the evidence. A jury trial was held, and the jury found in favor of Defendants. Judgment was entered on 10 November 2010. Plaintiff appeals.

## I. Jury Instruction

[1] In Plaintiff's first argument, he contends that the trial court committed prejudicial error by instructing the jury on insulating negligence. The question raised in this appeal, which apparently is one of first impression, is whether a defendant may be insulated from liability by an independent act of a plaintiff, who was also the injured party in the action. Defendants argued that negligence on the part of Ms. Miller could serve to insulate Defendants from liability in the present case, and the trial court agreed. In the present case, although we

MUTEFF v. INVACARE CORP.

[218 N.C. App. 558 (2012)]

determine that the trial court erred in giving the instruction on insulating negligence, we hold that Plaintiff was not prejudiced by this error.

Defendants raised the issue of insulating negligence for the first time at the charge conference. Plaintiff objected, arguing that Defendants were attempting "a third bite at contrib[.]" The trial court overruled Plaintiff's objection and instructed the jury on insulating negligence as follows:

> There may be more than one proximate cause of an injury and death. Therefore, Virginia Miller need not prove that the [D]efendant's negligence was the sole proximate cause of her injury and death. Virginia Miller must prove by the greater weight of the evidence only that the [D]efendant's negligence was a proximate cause.
>
> In defining proximate cause, I explain that there may be two or more proximate causes of an injury. This occurs when separate and independent acts or omissions of different people concur, that is combine, to produce an injury.
>
> Thus, if the negligent acts or omissions of two or more people concur to produce the injury complained of, the conduct of each person is a proximate cause, even though one person may have been more or less negligent than the other.
>
> A natural and continuous sequence of causation may be interrupted or broken by the negligence of a second person. This occurs when a second person's negligence was not reasonably foreseeable by the first person, and it causes its own natural and continuous sequence which interrupts, breaks, displaces or supersedes the consequences of the first person's negligence.
>
> Under such circumstances, the negligence of the second person not reasonably foreseeable by the first person insulates the negligence of the first person and would be the sole proximate cause of the injury.
>
> In this case, the [D]efendant Invacare and American Mobility contend that if they were negligent, which they deny, such negligence was not a proximate cause of the [P]laintiff's injury because it was insulated by the negligence of Virginia Miller.
>
> You will consider this matter only if you find that the [D]efendant was negligent. If you do so find, the [D]efendant's negligence would be insulated, and the [D]efendant would not be

liable to the [P]laintiff if the negligence of Virginia Miller was such as to have broken the causal connection or sequence between the [D]efendant's negligence and the [P]laintiff's injury, thereby excluding the [D]efendant's negligence as a proximate cause.

The negligence of Virginia Miller would thus become, as between the negligence of the [D]efendant and Virginia Miller, the sole proximate cause of the [P]laintiff's injury.

On the other hand, if the causal connection between the negligence of the [D]efendant and the [P]laintiff's injury was not broken, and the [D]efendant's negligence continued to be a proximate cause of the [P]laintiff's injury up to the moment of the fire, then the [D]efendant would be liable to the [P]laintiff.

If at the time of the [D]efendant's negligent act, the [D]efendant reasonably could have foreseen such negligent conduct was—which was likely to produce injury on the part of one in the position of Virginia Miller, the causal connection would not be broken, and the negligence of the [D]efendant would not be prevented from being a proximate cause of the [P]laintiff's injury.

However, if the negligence of the [D]efendant would not have resulted in the [P]laintiff's injury, except for the negligence of Virginia Miller, and if negligence and resulting injury on the part of one in the position of Virginia Miller was not reasonably foreseeable to the [D]efendant, then the causal connection would be broken, and the negligence of the [D]efendant Invacare and American Mobility would not be a proximate cause of the [P]laintiff's injury.

The burden is not on the [D]efendant to prove that his negligence, if any, was insulated by the negligence of Virginia Miller; rather, the burden is on the [P]laintiff to prove by the greater weight of the evidence that the negligence of the [D]efendant was a proximate cause of the [P]laintiff's injury.

Our Supreme Court has explained the law concerning insulating negligence as follows:

In order to insulate the negligence of one party, the intervening negligence of another must be such as to break the sequence or causal connection between the negligence of the first party and the injury, so as to exclude the negligence of the first party

as one of the proximate causes of the injury. An efficient intervening cause is a new proximate cause. It must be an independent force which entirely supersedes the original action and renders its effect in the chain of causation remote. The test by which the negligent conduct of one is to be insulated as a matter of law by the independent negligent act of another, is reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resultant injury. Put another way, in order for the conduct of the intervening agent to break the sequence of events and stay the operative force of the negligence of the original wrongdoer, the intervening conduct must be of such nature and kind that the original wrongdoer had no reasonable ground to anticipate it.

*Adams v. Mills*, 312 N.C. 181, 194-95, 322 S.E.2d 164, 172-73 (1984) (citations omitted). " 'An efficient intervening cause is a new proximate cause which breaks the connection with the original cause and becomes itself solely responsible for the result in question. It must be an independent force, entirely superseding the original action and rendering its effect in the causation remote.' " *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 236, 311 S.E.2d 559, 566 (1984) (citation omitted).

Defendants argue in their brief: "The concept of insulating negligence has been applied historically to a plaintiff's negligence in the evolution of proximate cause analysis." Defendants cite a law review article stating that, in the past, it was common to refer to contributory negligence as a superseding or intervening cause. Defendants cite only one case from North Carolina in support of their contention that insulating negligence has been applied to insulate a defendant from liability due to the acts of the injured party plaintiff. That case is *Smith v. R.R.*, 145 N.C. 98, 58 S.E. 799 (1907), a case involving the collision of two riverboats in a fog. In *Smith*, our Supreme Court stated: "The rights and liabilities of the parties are to be ascertained by resorting to the principles which control in actions for alleged negligence wherein *contributory negligence* is set up as a defense." *Id.* at 101, 58 S.E. at 800 (citation omitted) (emphasis added). The *Smith* Court further stated:

" 'At common law the general rule is, that if both vessels are culpable in respect of faults operating directly and immediately to produce the collision, neither can recover damages so caused. In order to maintain his action, the plaintiff was obliged to establish the negligence of the defendant, and that

such negligence was the sole cause of the injury; or, in other words, he could not recover, though defendant was negligent, if it appeared that his own negligence directly contributed to the result complained of.' "

*Id.* (citation omitted). Thus, our Supreme Court has laid out the general rule for contributory negligence: it is an affirmative defense and, as a general proposition, any negligence on the part of a party that is a proximate cause of the injury will bar recovery for that party. It is true that the *Smith* Court discussed proximate cause and some concepts that are associated with insulating negligence[1], but we do not read *Smith* as having applied the modern rules of insulating negligence to the facts in *Smith*. We read *Smith* as holding that, because there was undisputed evidence of negligence on the part of the plaintiff as a proximate cause of plaintiff's injuries, plaintiff was barred from recovery as a matter of law.

In their brief, Defendants do not cite any other North Carolina case in support of their argument. However, at oral argument, counsel for Defendants incorrectly stated that Defendants had included *Adams v. Mills*, 312 N.C. 181, 322 S.E.2d 164 (1984), in their brief in support of this proposition; however, only Plaintiff cited *Adams*. In *Adams*, Our Supreme Court stated:

It is the defendant's contention that the plaintiff was contributorily negligent in temporarily letting his dump truck stand with a portion of it extending into the main traveled portion of the highway and that this negligence was a proximate cause of the collision. The *sole issue* presented on this appeal is the sufficiency of the evidence to support the defendant's *affirmative defense of contributory negligence.*

*Id.* at 183, 322 S.E.2d at 166 (emphasis added). In its discussion in *Adams* concerning whether the trial court properly declined to instruct the jury on contributory negligence, our Supreme Court discussed insulating negligence within the context of a discussion on proximate cause. Relevantly, that discussion was in relation to the possibility of the *plaintiff's* being insulated from liability due to *defendant's* alleged negligence. *Id.* at 194-95, 322 S.E.2d at 172-73. In every case where our appellate courts have held that one party's liability has been insulated due to the intervening acts of another, the

---

1. Notably absent from the relevant analysis in *Smith* was any mention of foreseeability, which is a crucial element in any insulating negligence analysis. *Barber v. Constien*, 130 N.C. App. 380, 502 S.E.2d 912 (1998).

intervening acts have been those of some third party—either a different defendant or a person not made party to the action.

*Adams* does *suggest* that a *defendant's* own negligence can be considered "insulating negligence" and therefore defeat that defendant's contributory negligence defense. We also agree "that intervening negligence, also referred to in our case law as superseding or insulating negligence, is an elaboration of a phase of proximate cause." *Barber v. Constien*, 130 N.C. App. 380, 383, 502 S.E.2d 912, 914 (1998) (citation omitted). Because insulating negligence is a factor to consider when making a determination of proximate cause, there is some logic to support Defendants' contention that it could apply to the alleged negligence of Ms. Miller. However, history and common sense dictate a different result. As we have stated, we have found no North Carolina case where insulating negligence has been applied to facts such as the ones before us. Additionally, our State is a contributory negligence state. If a defendant can prove negligence—absent a finding of gross negligence on the part of the defendant—and proximate cause on the part of a plaintiff, that plaintiff will be completely barred from recovery. *Yancey v. Lea*, 354 N.C. 48, 51, 550 S.E.2d 155, 157 (2001).

However, contributory negligence is an affirmative defense, and the burden of proof lies with the defendant asserting it. Were we to adopt Defendants' position, it would become a plaintiff's burden to prove that plaintiff was not negligent, or that any negligence on that plaintiff's part was not an intervening proximate cause of the alleged injury.

Though Defendants took a different approach at oral argument, in their brief they stated:

> As proximate cause analysis evolved, certain principles materialized, and it became apparent that the concept of intervening negligence, when applied to a plaintiff's conduct, was merely another analytical tool to describe contributory negligence. Admittedly, while the terminology of insulating negligence is not typically applied to plaintiff's alleged negligence in the most recent case law of our state, its earlier application in this very context illustrates that such usage, being the functional equivalent of contributory negligence, is consistent with established legal principles, and is merely a different method of analyzing and explaining proximate cause with respect to a plaintiff's alleged negligent conduct.

If insulating negligence, when applied to the conduct of Ms. Miller, is the equivalent of contributory negligence as Defendants

argue, then there was no need for an instruction on insulating negligence because an instruction on contributory negligence was also given. More importantly, if Defendants' argument is correct, we *must* find error in the instruction given, as that instruction explicitly stated that Defendants did not have the burden of proof on the issue of insulating negligence. If insulating and contributory negligence were interchangeable in the present case, it was error for the trial court to remove the burden of proof from Defendants and effectively shift that burden to Plaintiff.

We believe that contributory negligence was the sole method available in the present case to relieve Defendants from any liability due to negligence on their part that was a proximate cause of Ms. Miller's injury. The standard for proving contributory negligence is lower than that for establishing insulating negligence, as the degree or foreseeability of the plaintiff's acts are not a factor in proving contributory negligence. However, the burden does fall on the defendant to prove contributory negligence. We hold that the trial court erred in instructing the jury on insulating negligence in the present case.

However, on the facts before us, we do not find that the trial court's error prejudiced Plaintiff. The jury found that Invacare did not breach the implied warranty of merchantability with regard to Invacare's manufacture of the wheelchair. The trial court instructed the jury with respect to the implied warranty of merchantability as follows:

> The fourth issue reads: Did Invacare breach the implied warranty of merchantability made to Virginia Miller? On this issue, the burden of proof is on Virginia Miller. This means that Virginia Miller must prove by the greater weight of the evidence that Invacare breached the implied warranty of merchantability made to Virginia Miller. A breach of the implied warranty of merchantability occurs if the wheelchair is not fit for the ordinary purposes for which such merchandise is used. A products liability claim based upon a breach of warranty is not depend-ent upon a showing of negligence. A breach of the implied warranty of merchantability occurs if the M71 was defective . . . under normal use. A defect may be inferred from evidence from the product's malfunction if there is evidence the product had been put to its ordinary use.
>
> A breach of the implied warranty of merchantability may also occur if the M71 did not contain an adequate or proper warn-

ing. Finally, as to this fourth issue on which Virginia Miller has the burden of proof, if you find by the greater weight of the evidence, that Invacare breached the implied warranty of merchantability made to Virginia Miller, then it would be your duty to answer the issue yes in favor of Virginia Miller. If, on the other hand, you fail to so find, then it would be your duty to answer this issue no in favor of Invacare.

The jury determined that Invacare did not breach the implied warranty of merchantability. Necessarily, the jury had to make a determination that the wheelchair was not defective, and that warnings provided with the wheelchair were not inadequate, in order to find that Invacare did not breach the implied warranty of merchantability. Plaintiff's theory of negligence for both Defendants was predicated on a defect in the design of the wheelchair. Absent a finding of any defect in the design of the wheelchair, Plaintiff could not prevail in his negligence claims against Defendants.

The erroneous instruction on insulating negligence only applied to the negligence claims, not the warranty claims. There was nothing in the jury instructions permitting the jury to consider insulating negligence in its deliberations on the warranty claims. Therefore, the erroneous insulating negligence instruction could not have tainted the jury's verdict on the warranty claims, and those verdicts must stand. Because, on the facts before us, the jury could not have found Defendants liable for negligence after finding the wheelchair was not defective and the warnings accompanying the wheelchair were not inadequate, Plaintiff was not prejudiced by the erroneous instruction on insulating negligence.

## II. Severance Issue

[2] Plaintiff argues that the trial court abused its discretion in severing Plaintiff's claim for unfair and deceptive trade practices (UDTP) from Plaintiff's other claims. We disagree.

The trial court granted Defendants' motion to sever the UDTP claim and reserved that claim for consideration after the jury made its determination concerning Plaintiff's other claims. A trial court's decision on a motion to sever will not be overturned absent a showing that the trial court abused its discretion. *Insurance Co. v. Transfer, Inc.*, 14 N.C. App. 481, 484, 188 S.E.2d 612, 614 (1972). Plaintiff's claim for UDTP was based entirely upon Plaintiff's allegation that Invacare manufactured a defective product. Plaintiff alleged in his complaint:

Defendant Invacare's offering of dangerous and defective self-propelled wheelchairs to the public—specifically to physically disabled consumers, who relied upon their wheelchairs in order to move, and would necessarily be helpless to escape a hazard caused by their means of transport—was an unfair and deceptive act or practice, in violation of G.S. § 75-1.1.

Therefore, absent a finding by the jury that the wheelchair contained a design defect, the jury could not have found that the wheelchair (or any M71 wheelchair in general) was offered to the public in a dangerous and defective state. The trial court's grant of Defendants' motion to sever the UDTP claim saved the parties and the trial court time and expense that would have been unnecessarily spent prosecuting and defending an UDTP claim that would have failed. We find no abuse of discretion. We also disagree with Plaintiff's argument that he was prejudiced for the same reason—having determined that the wheelchair was not defective, the jury could not have found any UDTP upon Plaintiff's theory in that claim.

### III. Judicial Notice

**[3]** In Plaintiff's final argument, he contends the trial court "erred in taking judicial notice of a Texas Supreme Court opinion and instructing the jury that it was conclusive." We disagree.

First, a trial court's decision concerning judicial notice will not be overturned absent an abuse of discretion. *Smith v. Beaufort County Hosp. Ass'n*, 141 N.C. App. 203, 211, 540 S.E.2d 775, 781 (2000). "[G]enerally a judge or a court may take judicial notice of a fact which is either so notoriously true as not to be the subject of reasonable dispute or *is capable of demonstration by readily accessible sources of indisputable accuracy." West v. Reddick, Inc.*, 302 N.C. 201, 203, 274 S.E.2d 221, 223 (1981) (citations omitted). The trial court instructed the jury as follows:

> The [trial court] has taken judicial notice that the Texas Supreme Court issued an opinion in the case of Whirlpool versus Camacho. The law provides that the [trial court] may take judicial notice of certain facts that are so well-known or so well-documented that they are not subject to reasonable dispute.

> When the [trial court] takes judicial notice of the—of a fact, neither party is required to offer proof as to such fact. Therefore, you will accept as conclusive that the Texas Supreme Court issued an opinion in the case of Whirlpool versus Camacho.

MUTEFF v. INVACARE CORP.

[218 N.C. App. 558 (2012)]

You are the sole judges of the credibility of each witness. You must decide for yourselves whether to believe the testimony of any witness. You may believe all or any part or none of that testimony.

Plaintiff argues: "A jury can hardly be expected to weigh an expert's opinion fairly when the trial court has told it that the highest court of another state has found his opinion insufficiently reliable and that this is conclusive." As is clearly indicated by the trial court's instruction, it did not in any manner indicate that the opinion of Plaintiff's expert was conclusively unreliable. The trial court did not even take judicial notice of the fact that the Texas Supreme Court found Plaintiff's expert unreliable in the *Whirlpool* opinion. The trial court merely took judicial notice that the Texas Supreme Court had filed an opinion in the case of *Whirlpool v. Camacho*. Plaintiff and Defendants examined and cross-examined Plaintiff's expert thoroughly concerning the *Whirlpool* opinion, and the trial court instructed the jury: "You are the sole judges of the credibility of each witness. You must decide for yourselves whether to believe the testimony of any witness. You may believe all or any part or none of that testimony." The fact that the Texas Supreme Court filed an opinion in *Whirlpool v. Camacho* was accepted by both parties, and was a fact "capable of demonstration by readily accessible sources of indisputable accuracy." *West*, 302 N.C. at 203, 274 S.E.2d at 223. We hold that the trial court did not abuse its discretion in taking judicial notice of the fact that the Supreme Court of Texas filed the *Whirlpool* opinion. *See Reddick*, 302 N.C. at 203-04, 274 S.E.2d at 223-24.

No prejudicial error.

Judges STEELMAN and ERVIN concur.