IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 20-27

Filed: 16 June 2020

Wake County, No. 18 CVS 3250

ROBERT E. MONROE, as Administrator of the Estate of NAKA HAMILTON, Plaintiff,

v.

REX HOSPITAL, INC. d/b/a REX HOSPITAL, REX HEALTHCARE, UNC REX HOSPITAL, UNC REX HEALTHCARE, UNC REX HEMATOLOGY ONCOLOGY ASSOCIATES and HENRY CROMARTIE, III, M.D., Defendants.

Appeal by defendant from order entered 24 July 2019 by Judge A. Graham Shirley II in Wake County Superior Court. Heard in the Court of Appeals 26 May 2020.

> *Charles G. Monnett III & Associates, by Charles G. Monnett III, and Spangenberg Shibley & Liber LLP, by Jeremy A. Tor and Stuart E. Scott, for plaintiff-appellant.*

> *Young Moore and Henderson, P.A., by Madeleine M. Pfefferle and Elizabeth P. McCullough, for defendant-appellee.*

YOUNG, Judge.

This appeal arises out of a medical malpractice claim. Plaintiff failed to show causation, and there was no genuine issue of material fact exists. Therefore, the trial court properly granted summary judgment. Accordingly, we affirm.

I.    Factual and Procedural History

On 27 April 2016, Naka Hamilton ("Ms. Hamilton") went to the Rex Hospital Emergency Department ("Rex ED"). John Lilley, M.D., ("Dr. Lilley") was the doctor present at Rex ED when Ms. Hamilton arrived. Dr. Lilley called Henry Cromartie, III., M.D., ("Dr. Cromartie"). Ms. Hamilton was admitted to Rex and received a diagnosis of Thrombotic thrombocytopenic purpura ("TTP"). TTP can rapidly progress and the treatment for it is plasma exchange therapy ("PLEX"). If TTP is left untreated, multi-organ failure and death can occur. Without PLEX, the mortality rate is 90%. If PLEX is timely administered, the mortality rate is 10%.

Upon Ms. Hamilton's TTP diagnosis, Dr. Cromartie recommended a bridge therapy treatment be administered to correct her anemia prior to the initiation of further treatment. Dr. Cromartie recommended that Dr. Lilley order Ms. Hamilton further laboratory tests and believed Ms. Hamilton should receive packed blood cells ("PRBC") and fresh frozen plasma ("FFP") as her first line of treatment. Dr. Cromartie claims he was not the on-call hematologist on 27 or 28 April 2016, but that he agreed to consult on the patient and did not tell Dr. Lilley that he was not on-call.

After Dr. Cromartie's conversation with Dr. Lilley, Ms. Hamilton was admitted to the Intensive Care Unit ("ICU") by Rex Hospitalist Ahmed Khan, M.D. ("Dr. Khan"). Dr. Cromartie spoke with Dr. Khan at approximately 1:30 a.m. on 28 April 2016 and provided his recommendations. Dr. Cromartie was not consulted further and did not have any further involvement in Ms. Hamilton's care. Dr. Cromartie

expected transfusions of PRBC and FFP would be completed within five to seven hours, which would approximately coincide with shift changes when the morning physicians would arrive at the hospital.

The orders were not entered until 4:40 a.m. on 28 April 2016, the first FFP transfusion was not administered until around 9:00 a.m., and the first PRBC was not administered until 11:08 a.m. Ms. Hamilton remained at the hospital for more than eleven hours after Dr. Cromartie's conversation with Dr. Khan. She was treated by numerous health care providers until she passed on 28 April 2016 at approximately 2:28 p.m. without receiving PLEX.

Ms. Hamilton was survived by a one-year-old daughter. A complaint for wrongful death, medical malpractice was filed by Ms. Hamilton's estate. The complaint named Dr. Cromartie and several other defendants. All defendants except Dr. Cromartie have been voluntarily dismissed from the case. Plaintiff called John Feigert, M.D. ("Dr. Feigert") as the only causation expert.

On 31 May 2019, Dr. Cromartie filed a motion for summary judgment, a motion to strike, and a motion to dismiss. The trial court entered an order granting summary judgment and dismissed the case based on the defense of superseding negligence. Plaintiff filed timely written notice of appeal.

## II.    Standard of Review

"On appeal, the appellate court reviews summary judgments to determine if there was a genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law. The standard of review for summary judgment is *de novo*." *Howse v. Bank of Am.*, N.A., 255 N.C. App 22, 26, 804 S.E.2d 552, 555 (2017); *see also Robinson v. Duke Univ. Health Sys., Inc.*, Inc., 229 N.C. App. 215, 219, 747 S.E.2d 321, 326 (2013); N.C. Gen. Stat. § 1A-1, Rule 56 (c)(2019).

### III. Causation

Summary judgment is proper when the plaintiff fails to produce sufficient evidence of an essential element of a medical malpractice action: applicable standard of care, breach of the standard of care, causation, and damages. *Weatherford v. Glassman*, 129 N.C. App. 618, 621-22, 500 S.E.2d 466, 468-69 (1998). North Carolina courts "rely on medical experts to show medical causation because 'the exact nature and probable genesis of a particular type of injury involves complicated medical questions so far removed from the ordinary experience and knowledge of laymen[.]'" *Day v. Brant*, 218 N.C. App. 1, 11, 721 S.E.2d 238, 246 (2012) (quoting *Azar v. Presbyterian Hosp.*, 191 N.C. App. 367, 371, 663 S.E.2d 450, 453 (2008)). To hold a defendant responsible for injuries, expert medical testimony is necessary to establish that defendant's negligence was a substantial factor, that is, a proximate cause of the particular injuries for which plaintiff seeks recovery. *See Lee v. Stevens*, 251 N.C. 429, 433-34, 111 S.E.2d 623, 626-27 (1959).

In North Carolina, the legal definition of proximate cause is:

> a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries, would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.

*Adam v. Mills*, 312 N.C. 181, 192-93, 322 S.E.2d 164, 172 (1984) (quoting *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984)).

The natural and continuous sequence of causation may be interrupted or broken by the negligence of a second actor. *Muse v. Charter Hosp.*, 117 N.C. App. 468, 452 S.E.2d 589 (1995); *see also* N.C.P.I. Civil 102.65 (2016). In analyzing when a subsequent negligent act insulates a defendant's negligence, the North Carolina Supreme Court reasoned, "[s]upposing that if it had not been for the intervention of a responsible third party the defendant's negligence would have produced no damage to the plaintiff, is the defendant liable to the plaintiff? This question must be answered in the negative, for the general reason that no causal connection between negligence and damage is broken by interposition of independent responsible human action." *Butner v. Spease*, 217 N.C. 82, 87, 6 S.E.2d 808, 811 (1940).

If a second actor's conduct creates a "new cause, which intervenes between the original negligent act and the injury ultimately suffered" and "breaks the chain of causation set in motion by the original wrongdoer", the second actor becomes "solely

responsible for the injury." *Muse*, 117 N.C. App. at 476, 452 S.E.2d at 595. "The doctrine of insulating negligence is an elaboration of a phase of proximate cause." *Hampton v. Hearn*, __ N.C. App. __, __, 838 S.E.2d 650, 655 (2020) (internal quotes omitted) (*citing Clarke v. Mikhail*, 243 N.C. App. 677, 686, 779 S.E.2d 150, 158 (2015) (holding intervening and superseding cause is an extension of proximate cause, which the plaintiff bears the burden of establishing). The burden of proof remains on the plaintiff to prove the defendant's conduct was a proximate cause of his injuries and the burden is not shifted to the defendant to prove that his negligence, if any, was insulated by the negligence of another. *Hampton*, __N.C. App. at __, 838 S.E.2d at 655.

## IV. Intervening and Superseding Cause

For an intervening cause to insulate an original negligent actor of liability the "cause must be an independent force which turns aside the natural sequence of events set in motion by the original wrongdoer and produces a result which would not otherwise have followed, and which could not have been reasonably anticipated." *Muse*, 117 N.C. App. at 476, 452 S.E.2d at 595. "The test by which the negligent conduct of one is to be insulated as a matter of law by the independent negligent act of another, is reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resultant injury." *Adams v. Mills*, 312 N.C. 181, 194, 322 S.E.2d 164, 173 (1984). Therefore, "in order for the conduct of the intervening

agent to break the sequence of events and stay the operative force of the negligence of the original wrongdoer, the intervening conduct must be of such nature and kind that the original wrongdoer had no reasonable grounds to anticipate it." *Id.* North Carolina rejects the rule that "subsequent medical treatment is foreseeable as a matter of law." *Barber v. Constien*, 130 N.C. App. 380, 384, 502 S.E.2d 912, 915 (1998).

The trial court can declare whether an act was the proximate cause of an injury when there is such little evidence as to warrant an inference of proximate cause. *Lee*, 251 N.C. 433-43, 111 S.E.2d at 627 ("We may say with certainty that evidence which merely shows it possible for the fact in issue to be as alleged, or which raises a mere conjecture that it was so, is an insufficient foundation for a verdict, and should not be left to the jury").

## V.     Analysis

In this case, there is no evidence that the subsequent negligence was directly related to or dependent upon Dr. Cromartie's alleged negligence. Plaintiff's only causation expert, Dr. Feigert, testified that the negligent delay in administering the blood products redirected the natural sequence of events set in motion by Dr. Cromartie's recommendation and produced a result that would not have otherwise occurred.

Furthermore, there is no evidence that the negligent delay in the administration of blood products was related to or dependent upon Dr. Cromartie's alleged negligent failure to immediately order PLEX or to more adequately convey a sense of urgency to Dr. Khan. Dr. Cromartie was entitled to presume and act upon the presumption that Ms. Hamilton's subsequent health care providers would comply with their duty to treat her according to the applicable standard of care. *See Weavil v. Myers*, 243 N.C. 386, 391, 90 S.E.2d 733, 737 (1956); *Barber*, 130 N.C. App. at 384, 502 S.E.2d at 915.

Dr. Cromartie does not dispute that he did not order PLEX upon his initial consultation, but rather ordered PRBC and FFP to correct Ms. Hamilton's anemia, nor does he dispute Dr. Feigert opined those actions were a breach of standard of care. Rather, Plaintiff is unable to prove that Dr. Cromartie's alleged negligence proximately caused Ms. Hamilton's death.

Dr. Feigert expected all orders for Ms. Hamilton to be "STAT" orders based on her admission to the ICU. Furthermore, Dr. Feigert's expected time frame within which it would be reasonable for PRBC and FFP to be prepared and transfused is consistent with Dr. Cromartie's expectation and the other Rex physicians. Dr. Feigert opined that it was a breach of the standard of care to order blood products as a bridge to PLEX, but if bridge therapy was the plan, then it was reasonable to anticipate the

blood products would have been administered within the time frame Dr. Cromartie expected.

Therefore, the evidence shows that the delay in the administration of blood products was not reasonably foreseeable to Dr. Cromartie. Dr. Feigert also opined the result would have been different if the natural sequence of events had occurred according to Dr. Cromartie's reasonable expectation and no delay in the administration of the blood products intervened. Plaintiff contends that Dr. Cromartie's recommendation would not permit the team to begin to mobilize until 8:00 a.m. and PLEX not to be initiated until 4 p.m., which is past the point of no return. However, this is contrary to the evidence in the record, most importantly the testimony of Plaintiff's only expert witness designated to offer causation opinions. Dr. Feigert testified that not only would Ms. Hamilton more likely than not have survived if Dr. Cromartie's expectation had come to fruition, but also that Ms. Hamilton more likely than not would have survived if the blood products had been administered in a timely fashion.

Here, the hospital's failure to administer the ordered blood products was an independent force, at least two steps removed from Dr. Cromartie, such that he could not have foreseen its occurrence. Plaintiff's causation expert opined it was not foreseeable to Dr. Cromartie that the blood products ordered by Dr. Khan would not be provided and Ms. Hamilton's death would result.

North Carolina law clearly establishes that Dr. Cromartie is "not bound to anticipate negligent acts or omissions on the part of others", so he was entitled to presume and to act upon the presumption that the individuals caring for Ms. Hamilton would perform their duties. *Weavil*, 243 N.C. at 391, 90 S.E.2d at 737. As such, it was not reasonably foreseeable that the blood products would not be timely and efficiently administered, thereby delaying the initiation of PLEX past the point of no return.

The delay in the administration of blood products redirected the natural sequence of events set in motion by Dr. Cromartie's recommendation. Plaintiff did not dispute this. Plaintiff also did not address his own expert's testimony that the delay redirected the sequence of events set into motion by Dr. Cromartie such that Ms. Hamilton died, a result that would not have followed.

Plaintiff failed to establish a *prima facie* case because he did not prove that Dr. Cromartie's alleged negligence was a proximate cause of Ms. Hamilton's death. The independent and unforeseeable negligent delay in the administration of the blood products redirected the natural sequence of events set in motion by Dr. Cromartie's recommendation and caused Ms. Hamilton's death, which would not have otherwise followed. Without proving proximate cause, Plaintiff cannot prove causation, and therefore, cannot prove medical malpractice. There is no genuine issue of material

fact. Accordingly, summary judgement was properly granted, and the trial court's order is affirmed.

AFFIRMED.

Judges BRYANT and TYSON concur.